UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDRITZ HYDRO CANADA INC., the successor to VA TECH HYDRO CANADA, INC.,

    Plaintiff,

v.

ROCHESTER GAS & ELECTRIC CORPORATION,

    Defendant.

**COMPLAINT**

Case No.:

---

The Plaintiff, Andritz Hydro Canada Inc., the successor to VA Tech Hydro Canada, Inc. ("Andritz"), by its attorneys, Phillips Lytle LLP, alleges the following:

## NATURE OF ACTION

1. In this action, Andritz seeks (1) to hold Rochester Gas & Electric Corporation ("Defendant" or "RGE") liable for failing to pay termination costs related to foreign currency hedging contracts in the amount of 1,126,970.48 CAD; and (2) a declaratory judgment that declares these costs are a termination cost for which RGE is contractually liable.

## THE PARTIES

2. Andritz is a foreign corporation incorporated, organized and existing under the laws of the province of New Brunswick, Canada with a principal place of business in Quebec, Canada.

3. RGE is a New York corporation that maintains its principal place of business in Rochester, New York

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this case by diversity of citizenship pursuant to (a) 28 U.S.C. § 1332, as it arises from a dispute between Andritz, which is a citizen or subject of Canada, and RGE, which is a citizen of New York State, with an amount in controversy greater than $75,000, exclusive of interest and costs, and (b) 28 U.S.C. § 2201.

5. This Court may exercise personal jurisdiction over RGE, as RGE has (a) transacted business within New York out of which this dispute has arisen, and (b) maintains minimum contacts with New York such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this District because (a) a substantial part of the events or omissions giving rise to Andritz's claims occurred in this District, (b) RGE's contacts with this District would be sufficient to subject it to personal jurisdiction if this District were a separate state, and (c) upon information and belief, this District is one in New York which RGE has had the most significant contacts.

## FACTS

**A.   Andritz's Manufacturing and Supply of the Generating Unit for RGE Station 2**

7. Andritz is as a subsidiary of Andritz AG, a worldwide organization that supplies, among other things, electromechanical equipment and services for hydropower plants.

8. Andritz designs, manufactures, and supplies various equipment and services to hydropower plants in Canada and the US.

9. RGE is a utility service provider for nearly 700,000 electricity and natural gas customers in and around Rochester, New York. Its service area includes nine counties in the area, including Monroe, Wayne, Genesee, Orleans, Wyoming, Allegany, Livingston, Cayuga and Ontario.

10. RGE owns and operates a run-of-river hydroelectric power station, known as Station 2, located on the Genesee River in Rochester, New York.

11. In or about 2008, RGE decided to upgrade and expand Station 2 (the "Project") by, among other things, installing a new turbine-generator and associated equipment/systems (the "Generation Unit").

12. In connection with the supply of this Generation Unit, VA Tech Hydro Canada, Inc. ("VA Tech"), the predecessor company of Andritz Hydro Canada Inc., and RGE entered into a contract entitled "General Terms & Conditions, Rochester Gas & Electric Corporation, Station 2 New Unit Project for Supply of Generating Unit," dated February 5, 2008 (the "Agreement").

13. A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

14. The Agreement required payments to be made in U.S. dollars.

15. The practice of purchasing foreign currency hedging contracts to protect against currency fluctuations is a standard practice in international contracting.

16. Consistent with this standard practice and risk management guidelines, Andritz purchased foreign currency hedging contracts in connection with the Agreement to minimize or eliminate foreign exchange risk.

17. Through receipt of VA Tech's proposals, negotiation of the Agreement, and discussions regarding the scope of the Project, RGE knew, had reason to know and/or

should have known that VA Tech was procuring certain high-value items and engineering from Canada and Europe in foreign currency.

18. The Agreement provides for, among other things, RGE the right to suspend or terminate the Agreement in whole or part for its convenience. In the event of such suspension or termination, Section 18 of the Agreement provided for the following mandatory payment obligation:

> Purchaser may suspend or terminate this order in whole or in part for its own convenience by giving the Seller twenty-four (24) hours notice. In such event the Purchaser shall make payment to Seller for all costs incurred prior to such termination reasonably allocable to this order, under recognized accounting practice, together with a reasonable allowance for overhead and profit on work performed, plus all costs reasonably incurred by Seller as a result of the termination (such as cancellation fees of suppliers or wrap-up costs), less disposal or retention value of termination inventory. This provision shall not be deemed to limit or otherwise affect [RGE's] right to terminate this Agreement for breach or default by the Seller.

**B.     RGE's Suspension of Work for the Project and Payment Obligations**

19. On October 24, 2008, RGE submitted written notification to VA Tech that suspended the Project. A true and accurate copy of the suspension notice, dated October 24, 2008, is attached hereto as **Exhibit B**.

20. On December 31, 2008, VA Tech changed its name to Andritz Hydro Canada Inc. after an acquisition of the business by the Andritz Group.

21. Andritz immediately ceased all activities, as well as any activities of all Andritz subcontracts and material suppliers related to the manufacture and supply of the Generation Unit for the Project.

22. After that, RGE requested that it be provided the costs incurred by Andritz from the beginning of the Agreement up to October 24, 2008, but not including Andritz's costs associated with the foreign currency hedging contracts.

23. RGE's request demonstrated that it knew Andritz had foreign currency hedging contracts in place in connection with Andritz's obligations under the Agreement.

24. By letter dated February 13, 2009, Andritz quantified its costs as requested by RGE up to that point as $1,342,315, but highlighted that the costs associated with the foreign currency hedging contracts were not included.

25. In its letter of February 13, 2009, Andritz also notified RGE that it would continue incurring hedging costs during the period of suspension, and furthermore, that these hedging costs would increase if the Project was canceled. In this regard, the letter stated:

> Hedging Currency Exchange Rate Risk
>
> As we had covered during our recent meetings there remains the related subject of hedging contracts. The equipment supply contract with RG&E requires a firm price in US dollars. Under Andritz Hydro's Risk Management Guidelines, it is mandatory that exchange rate risk arising from business operations must be fully hedged by purchasing hedge contracts from financial institutions. Whenever the underlying transactions or cash flows do not materialize as planned, as is the case if a project is cancelled, the foreign exchange rate risk exposure arising from a risk hedging transaction must be closed.
>
> In February 2008, Hedging contracts were purchased for the Rochester project. These contracts related to the net balance of incoming and outgoing payments in USD and outgoing payments in Euros against our balance sheet currency (CDN).
>
> * * *
>
> While the Rochester project is in suspension status, Andritz Hydro's current positon regarding these contracts, is to rollover the contracts to future dates as they become due. There is a relatively minor transaction cost associated with this, calculated on the difference between the lending rates of the two currencies involved.
>
> If the project was to move from suspension status to cancellation, the current real cost to Andritz Hydro is approximately $450-500,000 USD. This is an

>approximate cost based on market rates of Feb. 5/09 and will fluctuate until the date actual instructions are given to cancel the contracts.
>
>\* \* \*
>
>Until we are given specific cancellation costs we will maintain the hedge contracts just as we maintain any materials specifically in hand for the project. When you determine cancellation is necessary we will advise you of the actual exposure. Until then we hope that you will get the approvals to continue in July, 2009 and the FX exchange costs remain only as minor transaction fees.

A true and accurate copy of Andritz's letter, dated February 13, 2009, is attached hereto as **Exhibit C**.

26. On March 10, 2009, Andritz submitted supplemental information regarding the costs it incurred before October 24, 2008. This letter again highlighted that the $1,342,315 incurred by Andritz to that point did not include "costs associated with [the] foreign currency hedging contracts." A true and accurate copy of Andritz's letter, dated March 10, 2009, is attached hereto as **Exhibit D**.

27. After reviewing these supporting materials for costs incurred by Andritz, on or about December 31, 2009, RGE made payment of $1,342,315.60

28. RGE later advised Andritz during discussions occurring on December 6, 2011, that it was not able to lift the suspension, but intended to proceed with the Generation Unit manufacturing sometime in 2014.

29. By letter dated April 23, 2012, Andritz further warned RGE about the foreign currency hedging costs being incurred during the suspension period, and proposed how the equipment costs and foreign currency hedging costs would be treated at the time the suspension was lifted. A true and accurate copy of Andritz's letter, dated April 23, 2012, is attached hereto as **Exhibit E**.

30. In its April 23, 2012 letter, Andritz even gave RGE the option to mitigate future termination costs resulting from the foreign currency hedging contracts, stating "Should RG&E elect to have ANDRITZ HYDRO immediately cancel the hedging contracts, the current real cost to ANDRITZ HYDRO is approximately $30,000."

31. Over the next many years, the Project remained suspended without any official position to either lift the suspension or terminate the Agreement.

32. In February of 2018, RGE contacted Andritz to inform Andritz that the Project was going to be moving ahead.

33. Also in February of 2018, at Andritz's request, RGE provided an estimated construction schedule for the Project, which projected installation of the Andritz equipment during a "Phase 2" scheduled for April 2023 – December 2025.

34. In April of 2018, RGE asked for Andritz's assistance in restarting the Project.

35. Given the continued suspension status of the Project and repeated indications by RGE of imminent suspension lift, Andritz kept the Project active and rolled-over its contractual obligations including, but not limited to, the foreign currency hedging contracts, from year to year.

36. Before termination of the Project, RGE never objected to these foreign currency hedging costs and was fully aware that Andritz was incurring these costs and that Andritz expected to be compensated for them.

37. RGE elected to continue the suspension of the Project and never took the position that it would not pay these foreign currency hedging costs. To the contrary, RGE acquiesced or by silence and conduct clearly and unambiguously promised to pay these foreign currency hedging costs.

38.     RGE had numerous opportunities to reduce and/or terminate its foreign currency hedging costs by either terminating the Agreement are advising Andritz to terminate its foreign currency hedging contracts.

**C.     Termination for Convenience of the Order and Termination Costs**

39.     During a telephone conversation on September 3, 2019, RGE notified Andritz that the suspension order would not likely be lifted, despite various discussions to the contrary.

40.     By letter dated November 4, 2019, Andritz formally requested that it be provided "an official position from [RGE] to either terminate the Contract or promptly lift the said suspension order." Andritz further advised that "[i]n the event of silence or refusal on the part of [RGE] to provide such official position within such prescribed time, Andritz will deem the Contract terminated pursuant to Section 18." A true and accurate copy of Andritz's letter, dated November 4, 2019, is attached hereto as **Exhibit F**.

41.     After the Project had been suspended for more than twelve (12) years and having received no response to Andritz's letter of November 4, 2019, and having made subsequent attempts to contact RGE to discuss this matter to no avail, Andritz advised RGE by letter dated March 20, 2020, that, for all the reasons set forth in the letter, it considered the Agreement terminated for convenience in accordance with Section 18 of the Agreement.

42.     Andritz further advised that it was winding down the Project and requested that RGE reimburse it "the amount of 1,126,970.48 CAD as final termination costs, which include[d] the costs incurred as a result of the Foreign Exchange fluctuations allocated to the Contract." A true and accurate copy of Andritz's letter of March 20, 2020, with details

of these costs and Invoice No. 85CL202003001, in the amount of 1,126,970.48 CAD, are attached hereto as **Exhibit G**.

43. RGE, in a letter from its General Counsel, dated April 16, 2020, acknowledged to Andritz that it terminated the Agreement for convenience pursuant to Section 18 of the Agreement.

44. RGE also in this letter of April 16, 2020, acknowledged that Section 18 of the Agreement applied in the event of a suspension or termination for convenience.

45. A true and accurate copy of RGE's letter to Andritz, dated April 16, 2020, is attached hereto as **Exhibit H**.

46. Despite RGE's confirmation of the termination for convenience of the Agreement, RGE denied that it owed any further payment obligation under Section 18 of the Agreement for the costs of the foreign currency hedging contracts.

47. RGE claimed that these costs were not a payment obligation under Section 18.

48. RGE also claimed Andritz's claim for such costs ignored the Limitations of Liability provision at Section 41 of the Agreement, which disclaims "incidental, special, indirect, punitive or consequential damages of any kind . . . ." *See* Exhibit H.

49. As explained by Andritz's March 20, 2020 letter, the hedging costs are actual, hard-dollar costs incurred by Andritz as a result of RGE's prolonged suspension and eventual termination of the Agreement.

50. Section 18 explicitly states that Andritz is entitled to recover "all costs" it incurs as a result of RGE's suspension and termination of the Agreement.

51. The hedging costs incurred by Andritz constitute a valid payment obligation for which RGE is liable under Section 18 of the Agreement.

52. The Limitation of Liability provision at Section 41 of the Agreement applies to calculation of damages for breach of contract, not to RGE's payment obligations under Section 18 of the Agreement. It is therefore not applicable to RGE's obligation under Section 18 to pay Andritz's foreign currency hedging costs as a result of the termination for convenience of the Agreement.

53. Furthermore, if the payments owed by RGE to Andritz could be considered damages, they are direct damages.

54. Based on the foregoing, it has become necessary to commence this lawsuit to recover the unpaid termination cost owed to Andritz under Section 18 of the Agreement in the amount of 1,126,970.48 CAD, along with declaratory relief.

## CLAIMS

### FIRST CLAIM
*(Breach of the Agreement)*

55. Andritz incorporates herein the allegations in each of the preceding paragraphs.

56. The Agreement is a valid and enforceable contract.

57. Andritz's costs for foreign currency hedging contracts is a payment obligation for which RGE is liable in connection with the suspension and termination of the Agreement.

58. RGE has materially breached the Agreement by, among other reasons, failing to pay this cost in the amount of 1,126,970.48 CAD.

59. Andritz has been damaged by RGE's material breach of the Agreement.

60. Andritz performed all of its obligations under the Agreement or was relieved of performance by RGE's material breach of the Agreement.

61. RGE is liable to Andritz in the amount of 1,126,970.48 CAD, or such other amount to be proven at trial, plus interest.

## SECOND CLAIM
*(Declaratory Judgment)*

62. Andritz incorporates herein the allegations in each of the preceding paragraphs.

63. Andritz claims that its costs for foreign currency hedging contracts are a payment obligation for which RGE is liable in connection with the suspension and termination of the Agreement under Section 18 of the Agreement.

64. RGE claims that it is not liable for Andritz's costs for foreign currency hedging contracts.

65. An actual, present and justiciable controversy has arisen between Andritz and RGE concerning whether Andritz's costs for foreign currency hedging contracts are a payment obligation for which RGE is liable under Section 18 of the Agreement.

66. Andritz seeks a declaratory judgment from this Court that Andritz's claim for costs of the foreign currency hedging contracts in the amount of 1,126,970.48 CAD, or such other amount to be proven at trial, is a payment obligation for which RGE is liable in connection with the suspension and termination of the Agreement or order under Section 18 of the Agreement.

## THIRD CLAIM
*(Implied-In-Fact Contract)*

67. Andritz incorporates herein the allegations in each of the preceding paragraphs.

68. The facts and circumstances of this case and the intention of the parties, as indicated by their conduct, are such to demonstrate and establish the actual existence of an enforceable implied-in-fact contract term and agreement requiring RGE to reimburse Andritz for all the costs of the foreign currency hedging contracts incurred in connection with the suspension and termination of the Agreement.

69. This implied-in-fact contract to reimburse Andritz for these costs is an enforceable contract.

70. RGE has materially breached this implied-in-fact contract by, among other reasons, failing to pay these costs in the amount of 1,126,970.48 CAD.

71. Andritz has been damaged by RGE's material breach of the implied-in-fact contract.

72. Andritz performed all of its obligations under the implied-in-fact contract or was relieved of performance by RGE's material breach of the implied-in-fact contract.

73. RGE is liable to Andritz in the amount of 1,126,970.48 CAD, or such other amount to be proven at trial, plus interest.

## FOURTH CLAIM
*(Unjust Enrichment)*

74. Andritz incorporates herein the allegations in each of the preceding paragraphs.

- 12 -

75. RGE received the benefits of Andritz keeping the Project active by Andritz rolling over its contractual obligations year-to-year during the period of suspension.

76. By keeping the Project active during this suspension period, RGE was able at any time to lift the suspension, at its sole discretion, and to require Andritz to proceed with the manufacture of the Generation Unit and performance of Andritz's remaining obligations under the Agreement.

77. This benefit was conferred upon RGE by Andritz.

78. It would be against equity and good conscience to permit RGE to receive and retain the benefit of the foregoing without having made full payment of the rollover costs of the foreign currency hedging contracts to Andritz.

79. Through its conduct in failing to pay Andritz for its foreign currency hedging costs, RGE has been unjustly enriched in the amount of 1,126,970.48 CAD, or such other amount to be proven at trial, plus interest.

**FIFTH CLAIM**
*(Promissory Estoppel)*

80. Andritz incorporates herein the allegations in each of the preceding paragraphs.

81. RGE elected to continue the suspension of the Project and the Agreement and never took the position that it would not pay Andritz's foreign currency hedging contract costs.

82. RGE acquiesced or by continuing silence and conduct, clearly and unambiguously promised to pay Andritz's hedging costs.

83. Andritz reasonably relied on this promise.

84. Despite repeated letters from Andritz warning of the hedging costs being actually and indefinitely incurred and Andritz's expectation of reimbursement by RGE for such costs, RGE remained silent for over twelve (12) years regarding its intention not to pay Andritz for such costs.

85. This silence constitutes a definite misrepresentation of fact, intent to mislead, and bad faith by RGE.

86. RGE expected and could foresee that Andritz would rely on the promise.

87. RGE knew or should have known that Andritz would rely to its detriment on the failure of RGE to object or inform that it would not pay these foreign currency hedging contract costs after being repeatedly presented and warned.

88. RGE's promise has injured Plaintiff in the amount of 1,126,970.48 CAD, or such other amount to be proven at trial, plus interest.

89. Failure to enforce the promise would result in injustice.

**WHEREFORE**, Andritz respectfully requests the following relief:

(a) On the First, Third, Fourth and Fifth Claims, a judgment against RGE in the amount of 1,126,970.48 CAD, or the equivalent amount in US dollars, or such other amount to be proven at trial, plus applicable interest.

(b) For the Second Claim, entry of a judgment according to the declaratory relief sought; and

(c) Awarding to Andritz such other and further relief as to the Court may deem just and proper, including costs and disbursements of this lawsuit.

- 15 -

Dated: September 29, 2020
      Rochester, New York

                        PHILLIPS LYTLE LLP

                By:   /s/ Chad W. Flansburg
                      Chad W. Flansburg
                      Attorneys for Plaintiff
                      *Andritz Hydro Canada, Inc.*
                      28 East Main Street, Suite 1400
                      Rochester, New York 14614
                      Telephone No. (585) 238-2000
                      cflansburg@phillipslytle.com

Doc #3322386