# EXHIBIT A

GENERAL TERMS AND CONDITIONS

Rochester Gas & Electric Corporation
Station 2 New Unit Project
Supply of Generating Unit

February 5, 2008

# TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | Definitions | 1 |
| 2. | Scope | 1 |
| 3. | Alteration of Terms | 1 |
| 4. | Compliance with Laws and Indemnification | 2 |
| 5. | Drawings, Design, Data, Creative Work and Inventions | 2 |
| 6. | Changes | 2 |
| 7. | Waiver | 3 |
| 8. | Delivery; Schedule; Delays | 3 |
| 9. | Prices | 3 |
| 10. | Payment | 4 |
| 11. | Delegations; Subcontracts; Assignment | 5 |
| 12. | Set-Off | 5 |
| 13. | Inspection | 5 |
| 14. | Warranty | 6 |
| 15. | Safety | 7 |
| 16. | Patents; Indemnification | 7 |
| 17. | Termination for Cause | 8 |
| 18. | Termination for Convenience | 8 |
| 19. | Insurance & Indemnification | 8 |
| 20. | Force Majeure; Impracticability; Excuse | 9 |
| 21. | Substitution | 9 |
| 22. | Independent Contractor | 9 |
| 23. | Audit Rights | 9 |
| 24. | Liens | 9 |
| 25. | Taxes | 10 |
| 26. | Spare Parts | 10 |
| 27. | Severability | 10 |
| 28. | Complete Agreement | 10 |
| 29. | Confidentiality | 10 |
| 30. | Title and Risk of Loss | 11 |
| 31. | Publicity | 11 |
| 32. | Governing Law | 11 |
| 33. | Special Conditions | 11 |
| 34. | Employee Solicitation | 11 |
| 35. | Energy East Code of Conduct | 12 |
| 37. | Beck's Notice | 12 |
| 38. | Security Requirements | 12 |
| 39. | Liquidated Damages | 12 |
| 40. | Performance Measurements | 13 |
| 41. | Limitation of Liability | 14 |
| 42. | Acceptance | 14 |
| SCHEDULE A | | 15 |
| SCHEDULE B | | 16 |
| SCHEDULE C | | 17 |
| SCHEDULE D | | 18 |
| SCHEDULE E | | 19 |

## 1.    Definitions

Purchaser:    Rochester Gas & Electric Corporation ("RGE")

Seller:    VA Tech Hydro Canada Inc.

## 2.    Scope

The Seller shall furnish materials and/or equipment as specified on the Purchaser's purchase order and any specifications attached thereto, and in accordance with the provisions of this Agreement. This Agreement shall serve as the blanket or master contract covering all purchase orders submitted by the respective Purchaser(s) hereunder. The respective Purchaser through its own purchase order shall establish delivery destination, quantities and other similar specific terms.

The following Contract Documents are incorporated by reference and form an integral part of this Agreement:

Schedule A:  Insurance Required to Be Supplied by Seller
Schedule B:  Purchaser's Specifications Dated June 2007
Schedule C:  Seller's Proposal Dated October 26, 2007
Schedule D:  Seller's Proposal Supplement Letter Dated December 10, 2007
Schedule E:  Delivery Schedule for Critical Components

The Contract Documents are intended to be read consistently with one another. In the event of a conflict between terms contained in two or more Contract Documents, the following order of precedence shall govern such conflict:

1) These General Terms and Conditions
2) Schedule E:  Delivery Schedule for Critical Components.
3) Schedule D:  Seller's Proposal Supplement Letter Dated December 10, 2007
4) Schedule C:  Seller's Proposal Dated October 26, 2007
5) Schedule B:  Purchaser's Specifications Dated June 2007
6) Schedule A:  Insurance Required to Be Supplied by Seller

## 3.    Alteration of Terms

None of the terms and conditions contained in this Agreement may be waived, altered, modified, or added to unless such waiver, alteration, modification or addition is in writing and signed by an authorized representative of Purchaser and Seller. Except as set forth in the previous sentence, each shipment from Seller to Purchaser shall be only upon the terms and conditions set forth in this agreement, notwithstanding any terms and conditions that may be contained in any acknowledgment, invoice, or other form of Seller, and notwithstanding Purchaser's act of accepting or paying for any shipment or any similar act of Purchaser.

## 4.  Compliance with Laws and Indemnification

4.1.   Seller warrants that it will comply with all applicable federal, state and local laws, statutes, ordinances, rules, regulations and orders, and that it will defend, indemnify and hold harmless the Purchaser from and against any and all liabilities, claims, costs, expenses, losses and judgments arising from Seller's failure to so comply.

4.2   Seller shall comply to the extent applicable, with Executive Order 11246, the Vietnam Era Veterans Readjustment Assistance Act of 1974, the Rehabilitation Act of 1973, as amended, and its or their implementing regulations, and reporting requirements thereunder. The Equal Opportunity and Affirmative Action clauses contained in Title 41, Chapter 60, Sections 1.4, 250.4, and 741.3 of the Regulations of the U.S. Department of Labor, Office of Federal Contract Compliance, and any section or sections superseding or amending the same, are hereby incorporated herein by reference and made a part hereof as though fully set forth where applicable.

## 5.  Drawings, Design, Data, Creative Work and Inventions

All drawings, sketches, designs, design data, specifications, notebooks, technical and scientific data, photographs, negatives, reports, findings, recommendations, data, information, memoranda, materials, creative works, inventions, innovations and other work products of every description relating there to, as well as all copies or descriptions of the foregoing, prepared or completed by Seller and paid for by Purchaser, **pursuant to this Agreement**, shall be subject to inspection by Purchaser at all reasonable times (for which inspection of the proper facilities shall be afforded Purchaser by the Seller), and shall remain the property of Seller, provided that Purchaser may use, through its employees or agents, or its subcontractors or vendors, such work product for purposes of operating, maintaining and repairing the equipment supplied pursuant to this Agreement. Purchaser shall not use or allow a third party to use such work product to manufacture equipment from Seller's drawings or designs.

Drawings, specifications, and all other information provided by Purchaser to Seller hereunder shall be treated by the Seller as strictly confidential, and shall not be disclosed, copied, or used on behalf of any third party without the prior written consent of Purchaser.

## 6.  Changes

6.1   Purchaser shall have the right to make changes in the drawings or specifications. No changes shall be made except under the written order of *an authorized representative of* Purchaser.

6.2   If Seller claims that any instructions by drawings, specifications or otherwise approved or issued by Purchaser after the date of the Agreement involve extra cost or time for performance under this Agreement, the Seller shall give written notice to Purchaser including an estimate of changed cost or time thereof within ten (10) days after the receipt of such instructions, and in any event before proceeding to execute the work, unless otherwise directed by Purchaser, or except in an emergency endangering life or property. No such claim for additional compensation or time shall be considered unless so made. If the change as ordered by Purchaser increases or decreases the cost of the material or equipment to be supplied, or time for performance established in the Agreement, a fair and reasonable amount, as agreed upon by Purchaser and Seller, shall be added to or subtracted from the compensation or completion date.

6.3     If, within ten (10) days after Seller has provided an estimate of changed cost and/or time, the parties are unable to conclude a mutually satisfactory agreement, Seller shall proceed with supplying the material or equipment as changed or modified until the differences are resolved. The parties shall endeavor to resolve any disputes regarding increases or decreases in costs resulting from such changes promptly through reasonable means, including, without limitation, impartial third party estimates or mediation.

# 7.     Waiver

No waiver by the Purchaser or Seller, whether express or implied, of any of the terms or conditions of this Agreement, shall be or be construed to be a continuing waiver, nor deprive Purchaser or Seller of the right to enforce or rely upon any such terms or conditions thereafter.

# 8.     Delivery; Schedule; Delays

**"TIME IS OF THE ESSENCE"** in the Seller's performance of this Agreement. Deliveries are to be made according to the terms of this Agreement, particularly as to time (as set forth in Schedule E), quantities, and location, with the Purchaser reserving the right to cancel, reject or refuse any delivery made prior to or subsequent to the times specified, if the quantities are not as specified, or if the delivery has been made to an improper location. If delivery as specified cannot be maintained, Purchaser must be notified immediately. In the event Seller fails to deliver all components listed in Delivery Groups 1, 2 and/or 3 of Schedule E within 45 days following the respective delivery dates set forth in Schedule E, as may be extended by change order in accordance with this Agreement, then Purchaser shall have the right to terminate this Agreement in accordance with Article 17 and to procure this material and/or equipment elsewhere, in whole or in part and to charge Seller with any additional costs incurred. The Parties agree that prior to expiration of the 45 day period set forth above, Purchaser shall be entitled to assess and collect from Seller liquidated damages for delay in accordance with Section 39 "Delivery Liquidated Damages", and that such liquidated damages shall be Purchaser's exclusive remedy for delay during the first 45 days of delay in completing deliveries for Delivery Group 1, 2 and/or 3 pursuant to Schedule E. If Purchaser elects to terminate after 45 days of delay in complete delivery of any Delivery Group, then Purchaser may pursue its termination and cover-related damages but shall not be entitled to collect liquidated damages beyond the effective date of termination.

# 9.     Prices

Seller agrees that the prices stated on the face of the Purchase Order shall be considered firm unless otherwise noted, and the Seller warrants that said prices do not exceed the prices allowed by any applicable federal, state or local law, regulation, or order.

3

# 10. Payment

10.1    Purchaser shall either pay the invoice with pay terms of Net 30 from date of invoice, or withhold payment in accordance with Section 10.2.

Invoices shall be submitted in accordance with the following milestone schedule

- 10% -    Upon Seller's acceptance of Purchase Order
- 10% -    upon Purchaser's receipt of Drawing Submittal Group 1 and 2
- 10% -    upon Purchaser's receipt of Drawing Submittal Group 3
- 10% -    upon Delivery to Site of Equipment Delivery Group 1
- 10% -    upon Completion of Production (Factory Test) of Equipment Delivery Group 2
- 10% -    upon Delivery to Site of Equipment Delivery Group 2
- 10% -    upon Completion of Production (Factory Test) of Equipment Delivery Group 3
- 15% -    upon Delivery to Site of Equipment Delivery Group 3
- 15% -    upon 30 days after date of substantial completion or 6 months after delivery, which ever occurs first

10.2    The Purchaser may in the following situations withhold, or, on account of subsequently discovered evidence, nullify the whole or part of any invoice to such extent as may be necessary to protect itself from loss:

a.    defective material or equipment;

b.    third party claims filed related to Seller's equipment or reasonable evidence indicating probable filing of such claims;

c.    failure of the Seller to make payments due to subcontractors, material suppliers or employees;

d.    reasonable indication that the work will not be completed within the time specified in the purchase order;

e.    unsatisfactory prosecution of the work by the Seller;

f.    invoicing which is incorrect; or

g.    overcharges in violation of the terms and conditions of this Agreement.

Payment does not constitute acceptance of any defective or non-conforming product or otherwise relieve supplier of any obligation under the contract.

## 11.  Delegations; Subcontracts; Assignment

11.1    Seller *shall not, without the prior written authorization of Purchaser, assign this Agreement or any of its rights under this Agreement, nor delegate any of its duties. Any attempt to do so will be void.* Seller shall obtain the written consent of the Purchaser, which may be withheld in Purchaser's reasonable discretion, as to Seller's key suppliers needed for performance of the Agreement prior to making any agreement with such suppliers. Seller shall not make any agreement with any third party to assign this Agreement in whole or in part or any right hereunder.

11.2    Purchaser may assign this Agreement, in whole or in part, (i) to a successor to all or substantially all of Purchaser's relevant assets, or (ii) in connection with a reorganization of the Purchaser that results in the separation of the power generation, distribution, and transmission functions, or any combination thereof, currently performed by the Purchaser in which case assignment shall be allowed to resulting Parent Corporation organized from such separation and/or sale of the power generation, distribution and transmission functions, or any combination thereof. Otherwise, neither party shall, without the consent of the other, which consent shall not be unreasonably withheld, conditioned or delayed, assign this Agreement in whole or in part hereunder.

## 12.  Set-Off

Purchaser may set off against any amount payable to the Seller under this Agreement any claim or charge it may have against Seller pursuant to this Agreement.

## 13.  Inspection

The Purchaser (and/or its designee) reserves the right to inspect the material and/or equipment prior to shipment. Such inspection does not relieve the Seller of its guarantees or responsibility to furnish satisfactory material or equipment. It is furthermore understood to be Purchaser's and/or Purchaser's designee's privilege to waive inspection at point of manufacture without prejudice to its right to decline acceptance at the point of delivery. Except as to items purchased from stock, items supplied hereunder and materials and components incorporated therein shall be subject to inspection at Purchaser's option by Purchaser or its designee during and after manufacture. All material and/or equipment are subject to inspection and *acceptance* tests at place of manufacture, or at destination, or at both places, by the Purchaser's representative. Rejected material and/or equipment shall not be submitted for acceptance without concurrent notice of their prior rejection.

## 14.  Warranty

14.1    Seller warrants that all materials and equipment furnished under this Agreement shall be new and of the kind and quality required by the Agreement and any specifications attached thereto; will be free from defects, errors or omissions under proper and normal use, will pass without objection in the trade under the Agreement description; and will be fit for the purpose(s) for which such material or equipment are used . *Material and equipment will be in accordance to manufacturers published literature and specifications* (all of which are attached hereto as Schedule B and incorporated herein by reference.). If required by Purchaser, the Seller shall furnish satisfactory evidence as to the kind and quality of materials and equipment. Material or equipment not conforming to these standards may be considered defective. Also, to the extent they are assignable, Seller shall assign to Purchaser all warranties of Seller's vendor and subcontractors with respect to equipment, materials or supplies used in the Work or Services or any part thereof. All warranties of vendors and subcontractors hereby assigned to Purchaser shall be in addition to, and not in lieu of, all warranties of Seller provided in this Agreement, and shall not relieve Seller of its obligations under this Agreement. With respect to performance, Seller guarantees performance as specifically set forth in Section 2 and Section 4 of Schedule C, Seller's Proposal.

14.1.1  In the event of a breach of warranty, Seller shall, at its option, and at its cost, modify, repair, or replace the defective material and/or equipment. In the event Seller is unable to satisfactorily repair the defect through modification, repair or replacement, the Purchaser may (have such modification, repair or replacement performed by a third party and charge such costs to Seller)*, to the extent the modification, repair or replacement does not diminish the intended utility of the material or equipment.* In the event such third party is unable to cure the defect, then the Purchaser may return the defective material , and, at its option, obtain a credit or refund of the purchase price for the defective material so returned. In the event this Section 14.1.1 applies to an entire equipment system and Purchaser elects to return the same for a refund, the Parties agree to negotiate as part of the refund calculation a reasonable depreciation based upon Purchaser's use of the equipment prior to the return and refund.

14.1.2  The Seller shall be responsible for all removal, reinstallation and transportation costs associated with the replacement, repair, modification, or return of defective parts and materials subject to the following conditions: a) if it can be proved that the defect is not due to faulty installation; b) that there is a powerhouse crane of sufficient capacity available and truck can drive in  directly below the powerhouse crane to load and offload; c) the  purchaser shall lockout and dewater the machine at its own cost.

The Seller may advise the Purchaser of any preferred routing for return of rejected material or equipment and whether or not the shipment should be protected by insurance or full declaration of value at the time of acceptance of this order. In the absence of such information from the Seller regarding such shipment, the Purchaser reserves the right to declare full valuation or insurance (whichever is applicable) for the benefit of and at the expense of the Seller.

14.2.   The warranty is conditioned upon operation of the equipment by the Purchaser in accordance with generally approved industry practice, and in accordance with conditions of service and operating instructions specified by the Seller, proper erection and maintenance of the equipment and notice by the Purchaser of nonconformity of the equipment.

14.2.1  The Seller's representatives shall have access at reasonable times to test and operating records, the equipment, and other information they deem necessary to satisfy themselves of the validity of a claim under this warranty. The Purchaser agrees to maintain sufficient written records to provide for reasonable substantiation of its compliance with the requirements and conditions of the warranty.

14.3    The Seller's liability for breach of the warranties established in this Article, shall be limited to those breaches, defects, errors or omissions reported to the Seller within two (2) years after delivery of the material or equipment supplied pursuant to this Agreement.

14.4    THE WARRANTIES PROVIDED IN THIS SECTION 14, ARE THE ONLY ONES THAT SELLER GIVES. SELLER HEREBY DISCLAIMS ALL OTHER WARRANTIES, WRITTEN OR VERBAL, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## 15.  Safety

Seller warrants that upon delivery the material or equipment will conform to the applicable occupational safety and health standards promulgated pursuant to the Federal Occupational Safety and Health Act of 1970 and which are in effect on the date that the Seller enters its acknowledgments of Purchaser's order.

## 16.  Patents; Indemnification

Seller guarantees that the sale or use of its material or equipment will not infringe any United States or foreign patent, and hold Purchaser harmless against all claims, judgments, decrees, costs and expenses resulting from any such alleged infringement. Seller shall at its own expense defend, or settle any claim, suit or proceedings brought against Purchaser, so far as based on an allegation that any material, equipment, or any part thereof furnished hereunder constitutes a direct or contributory infringement of any claim of any United States or foreign patent or copyright. Seller will be notified promptly and in writing by Purchaser of any such claim, and will be given authority, information and assistance for the defense of said claim, suit or proceeding. Seller shall pay all damages and costs awarded in such suit or proceedings so defended. In case the material, equipment or part thereof furnished hereunder becomes the subject of any claim, suit or proceeding that such material, equipment or part infringes any United States or foreign patent or copyright or if the use or sale of such material, equipment or part is enjoined, Seller shall, at Seller's option and at Seller's own expense, either: (a) Procure for Purchaser the right to continue using said material or part thereof; (b) Replace it with a non-infringing material. (c) Modify it so it becomes non-infringing. (d) Remove it and refund the purchase price plus the installation and conversion costs thereof. This indemnity shall not apply only to the extent that the claim for infringement would not have arisen but for (i) the Purchaser's modification or combination of the material or equipment without Seller's written consent, or (ii) the Purchaser's failure to comply in all material respects with Seller's design specifications. Further, this indemnity shall not apply to claims arising out of alleged infringement of a process patent where the process occurs outside of the equipment supplied by Seller and relates to a process not recommended or specified by Seller.

7

## 17.  Termination for Cause

In the event of any default or breach of any of the terms or conditions of this Agreement by Seller, or in the event of any proceedings by or against Seller in bankruptcy or insolvency or for appointment of any receiver or trustee or any general assignment for the benefit or creditors, Purchaser may, in addition to any other remedy provided it by law or in equity or other right reserved to it elsewhere in this Agreement, without any liability to Seller on account thereof, subject to a reasonable time to cure which shall not exceed ten (10) days (except in the case of delayed delivery as set forth below), immediately by telegraphic or other written notice, terminate all or any part of this Agreement. Purchaser may procure the material or equipment provided for herein elsewhere, on such terms and under such conditions as are reasonable in the discretion of the Purchaser, and Purchaser may hold Seller liable for any excess cost or other damages caused Purchaser as a result thereof.   Notwithstanding the foregoing, Purchaser shall not be entitled to terminate this Agreement for delay in delivery until and unless Seller is at least 45 days delayed in complete delivery of Delivery Group 1, 2 or 3 as set forth in Schedule E.

## 18.  Termination for Convenience

Purchaser may suspend or terminate this order in whole or in part for its own convenience by giving the Seller twenty-four (24) hours notice.  In such event the Purchaser shall make payment to the Seller for all costs incurred prior to such termination reasonably allocable to this order, under recognized accounting practice, together with a reasonable allowance for overhead and profit on work performed, plus all costs reasonably incurred by Seller as a result of the termination (such as cancelation fees of suppliers or wrap-up costs), less disposal or retention value of termination inventory.  This provision shall not be deemed to limit or otherwise affect the Purchaser's right to terminate this Agreement for breach or default by the Seller.

## 19.  Insurance & Indemnification

19.1    Seller agrees to maintain such insurance as will protect it (i) from claims under Worker's Compensation or Employer's Liability Acts and (ii) from any other claims for personal injury or property damage arising out of the performance of this Agreement.  The Seller shall obtain and maintain in effect for the term of this Agreement the insurance coverage required by Appendix A. Such insurance shall be obtained from an insurance carrier with a Bests rating of B+ or higher.

19.2    The Seller shall defend, indemnify, and hold harmless the Purchaser, its parent company, its affiliates, agents, employees, officers, directors and assigns, from and against any and all claims, demands, damages, losses, and expenses, including attorney's fees, asserted by a third party and arising out of or resulting from the performance of this Agreement, provided that any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property, and (b) is caused in whole or in part by a negligent act or omission of the Seller or any of its officers, agents, representatives, subcontractors, anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable.  This indemnity is conditioned upon provision of prompt notice of any claim to the Seller (provided, however, that failure or delay by Purchaser to provide notice to Seller shall only relieve Seller of its obligations hereunder to the extent Seller is materially prejudiced by such delay or failure) and allowing the Seller to control the defense and/or settlement of such claim.

8

## 20.   Force Majeure; Impracticability; Excuse

Seller shall not be charged with any liability for failure to perform when such failure is due to any cause beyond the control and without the fault or negligence of Seller, including but not limited to strikes, lockouts, fires, flood, acts of God, terrorism, epidemics, acts of Government or quasi-Governmental entities, war or riot; provided that the Seller shall have used its best efforts to remedy the situation, and rendered to Purchaser prompt notice in writing when it appears that such cause will result in non-performance under this Agreement. However, if any such failure shall threaten to impair Purchaser's ability to operate, Purchaser shall have the right, at its option and without being under any liability to Seller, to cancel, by notice in writing to Seller the portion or portions of the Agreement so affected and to take such compensatory action as may be necessary. Correspondingly, Purchaser shall be excused for failure of performance herein due to any cause beyond its control and without its fault or negligence, provided Purchaser provides Seller with prompt notice of any such cause or delay.

## 21.   Substitution

No substitution will be permitted under this Agreement except on specific written authority of the Purchaser's Purchasing Department.

## 22.   Independent Contractor

Seller shall at all times be an Independent Contractor and responsible for all acts or omissions of its agents, employees, and subcontractors. *Seller shall at all times control and retain the right to control it's performance,* no act or order of Purchaser shall be deemed to be the exercise of supervision or control of performance hereunder.

## 23.   Audit Rights

Purchaser reserves the right and Seller shall allow Purchaser to audit, or cause to have audited, any and all items related to any aspect of this Agreement in order to assure Seller's compliance therewith. These items shall include, but not be limited to, property, books, records, and computerized data files. This provision shall remain in effect for two (2) years following final payment for the material or equipment covered under this Agreement.

## 24.   Liens

The Seller warrants that it has good title to all material and equipment delivered pursuant to this Agreement and that the items to be supplied hereunder are free and clear of all liens, encumbrances and claims. Purchaser may withhold payment pending receipt of evidence in form and substance satisfactory to it of the absence of such liens, claims and encumbrances. Seller shall, at its own expense and cost, defend (at Purchaser's option), indemnify, and hold harmless Purchaser from and against all liens, encumbrances, or claims filed against Purchaser related to Seller's scope of supply.

## 25.   Taxes

Seller will be responsible for billing sales tax in accordance with the instructions provided on the Purchaser's purchase order.

## 26.   Spare Parts

Seller agrees to provide spare parts at the fair market price, with no minimum billing, for 10 years, or for the design life of the equipment purchased, whichever is greater.

## 27.   Severability

In the event any provision hereof shall be declared invalid, that provision shall be deemed severable from the remaining provisions of this Agreement, which shall remain in full force and effect.

## 28.   Complete Agreement

This "Agreement," together with all attachments and appendices, shall constitute the complete agreement between the parties with respect to the subject matter of this Agreement. All prior communications with respect to this Agreement, whether oral or written, are superseded by this Agreement. This Agreement may be executed in duplicate, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.

## 29.   Confidentiality

Seller, its employees and agents, shall treat any information, (including any technical information, experience or data) regarding Purchaser's plans, programs, plants, processes, costs, equipment, operations, or customers, which may be disclosed to, or come within the knowledge of, Seller its employees and agents in the performance of this Agreement, will maintain as confidential, and will not use or disclose to others, during the term of this Agreement, and for three (3) years thereafter, except as is necessary to perform the services hereunder, without Purchaser's prior written consent. The provisions of this Section shall not apply to any information referred to in this Section which (i) has been published and has become part of the public, (ii) has been furnished or made known to Purchaser by third parties (other than those acting directly or indirectly for or on behalf of Purchaser) as a matter of legal right and without restriction on disclosure, (iii) was in Seller's possession prior to disclosure by Purchaser and was not acquired by Purchaser, its employees and agents directly or indirectly from Purchaser, (iv) has been independently developed by Seller without any access to Purchaser's information, or (v) is required by law or by any other governmental regulatory authority to be disclosed.

Any information, which is supplied by the Seller to Purchaser under this Agreement, will be similarly restricted. Purchaser will not disclose such information to others or publish it in any form at any time; provided, however, that notwithstanding the foregoing, Purchaser may disclose any such information to its corporate affiliates, to its employees, and consultants, to any regulatory agencies or instrumentality's when such disclosure is necessary, or otherwise required by law. Purchaser agrees that it will cooperate with the Seller in an effort to minimize the amount of such information, which will be disclosed in any such case, and to make reasonable efforts to secure confidential treatment of such information.

In no event shall any of the Energy East Corporation affiliates' (referred to as "Purchaser" in this agreement) names and/or logo or the name and/or logo of it's parent company be used, whether written or verbal, duplicated, reproduced by any means whatsoever without the prior written permission of the President of Energy East Corporation, in the case of Energy East Corporation, and an authorized representative of the respective affiliate, in the case of an affiliate.

## 30. Title and Risk of Loss

Seller warrants that it shall have title to all equipment furnished hereunder, free and clear of all liens and encumbrances, and the right to sell such equipment.

Passage of Title and Risk of Loss – Complete legal and equitable title and risk of loss of each item of the equipment covered by this Contract shall pass to Purchaser immediately upon delivery at job site.

This provision shall apply irrespective of any terms of payment specified in this Contract. Passage of title pursuant to this provision shall not release or waive any continuing or subsequent responsibility of Seller under this Contract.

## 31. Publicity

Seller shall not issue, nor permit to be issued any press release, advertisement or literature of any kind or conduct or permit to be conducted any interview or news conference, referring to the services required hereunder, except upon prior written consent of Purchaser.

## 32. Governing Law

This Agreement shall be governed by and construed according to the laws of the State of New York.

## 33. Special Conditions

Seller would be required to extend contract pricing to any additional Energy East Corporation affiliate that may be acquired during the stated contract period. Purchaser reserves the right to reevaluate pricing with the supplier based upon the additional volume.

## 34. Employee Solicitation

During the term of this Agreement and for a period of one (1) year thereafter, except with the prior written consent of Purchaser, Supplier shall not solicit for employment any employee of Purchaser or Purchaser's current or future affiliates, and Supplier shall not induce or attempt to induce, directly or through an agent or third party, any such employee to leave the employ of Purchaser or Purchaser's current or future affiliates. As used herein, the term "affiliate" shall mean any person or entity controlling, controlled by, or under common control with Purchaser through majority stock or other ownership interest, direct or indirect.

## 35.   Energy East Code of Conduct

Seller shall comply with Energy East Code of Conduct in their performance of Energy East affiliate work under this master agreement.

## 36.   No Dispute

Seller covenants that it is not aware of any pending billing dispute or other contractual dispute (pursuant to current contracts or contracts no longer in effect) or any pending or threatened litigation between Seller and/or any of the Seller's affiliates and Purchaser and/or any of Purchaser's affiliates.

## 37.   Beck's Notice

As part of the Terms and Conditions of this agreement, Seller will comply with the provisions of 29 CFR part 470 as stated in 8.6 **Executive Order 13201 Compliance** and outlined by the U.S. Department of Labor.

## 38.   Security Requirements

Seller shall comply with the Purchaser's Security Requirements in their performance of work under this master agreement.

## 39.   Liquidated Damages

PERFORMANCE LIQUIDATED DAMAGES

A. Should the full load power output of the generating unit determined from Site tests to be conducted in accordance with IEC standards be less than the guaranteed full load power output (with allowance for measurement inaccuracies per IEC Standards), Seller will take all possible steps to correct the shortfall through modification and adjustment of the equipment. If after three unsuccessful attempts, Seller fails to make good the shortfall , then Seller and Purchaser shall meet to determine that either (1) Seller shall make up to two (2) additional attempts to make good the shortfall or (2) Seller shall pay liquidated damages for the shortfall as is set forth below. If, after two additional attempts, Seller is not able to make good the shortfall, then Seller shall pay the liquidated damages as set forth below. Liquidated damages, if elected, shall be calculated and paid as follows: Purchaser shall have the right to deduct from and retain out of such money which may be then due or which may become due and payable to Seller, the sum of $50,000 for every 0.1 MW shortfall of the full load power output with respect to the guaranteed output (and prorated for every 0.01 MW). Except as set forth in Section C below, liquidated damages, if collected, shall be Purchaser's exclusive remedy for Seller's failure to remedy the performance shortfall. For purposes of clarity, full load power output is defined as the proposed turbine rated output under 85 feet net head times the generator efficiency per VA TECH proposal supplement dated Dec 10, 2007 as limited by the generator 100% nominal rated output.

B. Should the weighted efficiency of the generating unit be less than the guaranteed weighted efficiency to be determined in accordance with test conducted as per IEC standards (and with allowance for measurement inaccuracies per IEC Standards), Seller will take all possible steps to correct the shortfall through modification and adjustment of the equipment. If after three unsuccessful attempts, Seller fails to make good the shortfall, then Seller and Purchaser shall meet to determine that either (1) Seller shall make up to two (2) additional attempts to make good the shortfall or (2) Seller shall pay liquidated damages for the shortfall as is set forth below. If, after two additional attempts, Seller is not able to make good the

12

shortfall, then Seller shall pay the liquidated damages as set forth below.  Liquidated damages, if elected, shall calculated and paid as follows:  Purchaser shall have the right to deduct from and retain out of such moneys which may be then due or which may become due and payable to Seller, the sum of $30,000, for every 0.1 percent shortfall in weighted efficiency (calculated to the nearest 0.1 percent).  Except as set forth in Section C below, liquidated damages if collected,  shall be Purchaser's exclusive remedy for Seller's failure to remedy the performance shortfall.

C.  In the event the full load power output or the weighted efficiency of the generating unit is less than the guaranteed full load power output or weighted efficiency set forth in this Agreement and if after three attempts by Seller to remedy the shortfall, the shortfall is still more than 2.5%, then Purchaser shall have the option to (a) accept the equipment and collect the liquidated damages set forth in Section A or B (as applicable), up to the maximum amount allowed under the Agreement; (b) have a third party remedy or attempt to remedy the performance shortfall and charge Seller with such costs; or (c) terminate the Agreement.  In the event Purchaser elects to terminate the Agreement pursuant to this Section C, Purchaser shall be entitled to return the equipment for a refund of monies paid to Seller under this Agreement, and to recover from Seller the difference between the Contract Price and  price Purchaser pays to a third party to obtain substantially similar replacement equipment.  In the case of each option stated herein, the option selected by Purchaser shall be Purchaser's exclusive remedy for Seller's failure to achieve the Performance Guarantees.

D.  The Performance Guarantees set forth in Section 2 and Section 4 of Schedule C and the Warranty set forth in Article 14 of this Agreement are the only performance guarantees or warranties with respect to the Work.  No other information shall be interpreted to be a performance guarantee or warranty.

### DELIVERY LIQUIDATED DAMAGES
A. Should Seller neglect, refuse or fail to complete delivery of the items in Delivery Groups 1, 2 and/or 3 of Schedule E by the dates set forth therein, after giving effect to extensions of time granted in accordance with the Agreement, then in that event, and in view of the difficulty of estimating with exactness the damages caused by such delay, Purchaser shall, have the right to deduct from and retain out of such monies which may be then due or which may become due and payable to Seller, the sum of $7,500 per complete day, for each and every calendar day that complete delivery of any of the Delivery Groups set forth in Schedule E is delayed, as liquidated damages, and not as a penalty.  For the first 45 days of delay in complete delivery of any of the Delivery Groups set forth in Schedule E, assessment and collection of the delivery liquidated damages set forth above shall be Purchaser's sole and exclusive remedy for Seller's delay in delivery.

### LIMIT OF LIQUIDATED DAMAGES
A.  The sum total of all liquidated damages under this Agreement, whether for delivery delay, performance shortfall. or both shall not exceed 15% of the total Contract Price, inclusive of all taxes.
B.  The parties agree that the damages that may flow from delay in delivery and failure to achieve the Performance Guarantees are difficult to quantify, and that the amounts set forth as liquidated damages in this Article 39 constitute a reasonable and good faith estimate of such damages.

# 40.  Performance Measurements
- Supplier On-time Delivery (3 days early, 0 days late)
- 95% Customer Order Completeness/Fill Rate
- 0% Supplier Corrective Action Reports (SCAR)
- 100% Invoice Accuracy
- 100% Defect-free.

Periodically, Purchaser may require Review Meetings to discuss supplier performance.  Topics of discussion may include, but are not limited to; schedule, quality and customer service.  Unsatisfactory performance may result in the development of a Supplier performance improvement plan.

## 41.   Limitation of Liability

The following limitations of liability shall apply regardless of whether claims arise in contract, tort, negligence, warranty, or otherwise. (a) Except for the liquidated damages expressly authorized in this Agreement and Seller's indemnification obligations set forth in Section 19.2 of this Agreement, in no event shall either party be liable to the other or any of its affiliates related in any way to this Agreement or performance thereof for any incidental, special, indirect, punitive or consequential damages of any kind, or for any lost profits, revenue or use, or loss or damage associated with shutdown, decreased capacity or inability to run the equipment at full capacity.   (b) Except for Seller's indemnification obligations set forth in Section 19.2, which shall be unlimited, and Seller's indemnification obligations set forth in Article 16, which shall be subject to subsection (c) below, Seller's aggregate liability to Purchaser arising out of this Agreement and performance thereof shall in no event exceed the total Contract Price ("Liability Cap"). (c) The aggregate liability of Seller to Purchaser arising out of Article 16 of this Agreement shall not exceed the sum of five million dollars (US $5,000,000) and any amount remaining in the Liability Cap.

## 42.   Acceptance

The authorized representatives of the Purchaser and Seller accept this Agreement:

**Purchaser**

Signature

Jessica Raines
Print Name

V P Supply Chain
Title

2/11/08
Date

**Seller**

Signature

R. G. POMEROY
Print Name

PRESIDENT
Title

Feb. 5 2008
Date

# SCHEDULE A

## INSURANCE TO BE PROVIDED BY
## THE SELLER

| COVERAGE | MINIMUM LIMITS AND TYPE OF | |
|---|---|---|
| INSURANCE | PER PROJECT | |
| | 0-500,000 | 500,000+ |
| Commercial General Liability OR | | |
| Owner's/Contractor's Protective Liability | | |
| Combined Single Limit Bodily Injury and Property Damage | $1,000,000 | $5,000,000 |
| Coverage shall include: Contractual Coverage Products and Completed Operations Explosion, Collapse and Underground Hazards, if applicable | | |
| Purchaser shall be designated as an additional insured as its interest may appear. | | |
| Business Automobile Liability (For all Owned, Non-Owned and Hired Automobiles) | | |
| Combined Single Limit Bodily Injury and Property Damage  $1,000,000 each occurrence. | | |
| Purchaser shall be designated as an additional insured as its interest may appear. | | |
| Workers' Compensation | Statutory Requirements | |
| Including the following coverage, if applicable; Federal Long-shoreman's and Harbor Workers' Act, Jones Act, or similar employee benefit acts which may be required by law. | | |
| Employers' Liability | Statutory Requirements | |
| Pollution Liability Coverage.  (If deemed applicable by Owner) | | |
| Limit to be determined on a per contract basis | | |
| Professional Liability.  (If deemed applicable by Owner) | | |
| Combined Single Limit | $1,000,000 | |

# SCHEDULE B
## SCOPE OF WORK

Seller shall produce the materials as defined in the specification titled, "Station 2 New Unit Project - Supply of Generating Unit, H-325921.40.01, Rev 1" dated June 2007.

# SCHEDULE C
## SELLER'S PROPOSAL

Seller's proposal dated October 26, 2007 is included herein by reference.

# SCHEDULE D
## PROPOSAL SUPPLEMENT LETTER

Seller's proposal supplement letter dated December 10, 2007 is included herein by reference.

# SCHEDULE E

## DELIVERY SCHEDULE FOR CRITICAL COMPONENTS

**Delivery Group 1**       **380 days from Notice to Proceed**

Draft tube elbow liner
Pre-embedded anchors for draft tube liner

**Delivery Group 2 ......... 500 days from Notice to Proceed**

Generator subassemblies
Main terminal box
Neutral phase terminal box
Control System line-up

**Delivery Group 3 ......... 570 days from Notice to Proceed**

Hydraulic Turbine including housing, distributor, operating servomotor, runner/shaft system, bearing and shaft seal, discharge ring, and flanged inlet extension
Specialty tooling for turbine
Pre-embedded parts for turbine housing
Hydraulic Pressure Unit Assembly
Generator Anchors