# EXHIBIT B



## ROCHESTER GAS & ELECTRIC CORPORATION

VA TECH HYDRO CANADA INC
944 S SERVICE RD
STONEY CREEK, ON   L8E 6A2
CANADA

Fax number: 905-643-7279

| **Service order** | |
|---|---|
| PO number / Date | 5000016885 / 02/11/2008 |
| Contact person / Telephone | Leo J. Fisher / 585-771-6033 |
| Fax number : | 585-771-2820 |
| e-mail address : | Leo.Fisher@energyeast.com |
| Our reference : | 10043199     C |
| Your person responsible: | SUDHIR SARIN |

Your vendor number with us:
46117

*Please deliver to:*
Station 2
RG&E
FALLS STRET
ROCHESTER NY   14614
USA

**NOTICE:** All packages, freight bills and correspondence must include the Purchase Order Number.  **ALL INVOICES must include Purchase Order number, Company name "RG&E" and your Federal Tax ID number.**

**Sold to:**   Utility Shared Services - RG&E
**Mail to:**   Accounts Payable Dept.
             70 Farm View Drive
             New Gloucester, ME 04260-5101
**OR E-Mail to:**   ussapinvoicing@energyeast.com
N.Y. State Sales Tax Permit No. DP000121;  EMP Identification No. 16-0612110

Valid to:              12/31/2009
Delivery Date for ALL items:   08/28/2009

Delivery terms: DFP - Destination, Freight Prepaid
Payment terms: Net 30 Days                                                                      Currency: USD

THE GENERAL TERMS AND CONDITIONS DATED 2/5/08 WHICH ARE SIGNED BY JESSICA RAINES AND K.G.POMEROY, SHALL GOVERN THIS ORDER.

| Item | Material Order Qty. | Unit | Description | Price per unit | Net value |
|---|---|---|---|---|---|
| 00010 | 5,589,243 | Each | Supply turbine-generator equipment | 1.00 | 5,589,243.00 |

CONSIDER THIS PURCHASE ORDER FOR THE FOLLOWING:

Supply turbine-generator equipment for the new unit at RG&E Station 2. The equipment shall be in conformance with the following documents:
- RG&E Technical Specification H-325921, Revision 1 dated June 2007
- VA Tech proposal dated October 26, 2007
- VA Tech proposal clarifications dated December 10, 2007
- General Terms and Conditions dated 2/5/08 which are signed by  Jessica Raines and

-Unless RG&E receives notice, within 48 hours of [Vendor's] receipt of a facsimile of the Purchase Order, Terms and Conditions and other documents related to the product or service provided (collectively, "the Terms"), of [Vendor's] objection to the Terms, the facsimile shall be sufficient to bind the parties, and no further document shall be necessary to establish the relationship.
-The provisions of 41 CFR 60-1.4 are hereby incorporated by reference.
-Your quotation / proposal is incorporated into this Purchase Order only to the following extent: price, quantity, work scope, specification, freight terms and payment terms.  Supplier's performance hereunder shall be deemed acceptance of owner's terms and conditions.
-This purchase order is subject to the terms and conditions printed on the last page hereof and to any further instructions, specifications and other materials made a part hereof by the buyer.

Approved by

*Jessica Raines*

V.P. Supply Chain



## ROCHESTER GAS & ELECTRIC CORPORATION

**NOTICE:** All packages, freight bills and correspondence must include the Purchase Order Number. **ALL INVOICES must include Purchase Order number, Company name "RG&E" and your Federal Tax ID number.**

**Sold to:** Utility Shared Services - RG&E
**Mail to:** Accounts Payable Dept.
70 Farm View Drive
New Gloucester, ME 04260-5101
**OR E-Mail to:** ussapinvoicing@energyeast.com
N.Y. State Sales Tax Permit No. DP000121;  EMP Identification No. 16-0612110

VA TECH HYDRO CANADA INC
944 S SERVICE RD
STONEY CREEK, ON  L8E 6A2
CANADA

PO number / Date
5000016885 / 02/11/2008

Page
2

| Item | Material Order Qty. | Unit | Description Price per unit | Net value |
|---|---|---|---|---|

K.G. Pomeroy.

This order shall include one (1) vertical hydraulic Kaplan turbine with intake elbow and discharge draft tube, one (1) vertical 6.3 MW sychronous generator, one (1) hydraulic pressure unit and one (1) plant control system for a fixed price of $5,263,020.

This order shall include Spare Parts for the turbine, generator and controls for a fixed price of $145,518.

This order shall also include Field Service support during equipment installation and start-up. This work shall be billed on a Time & Material basis, at the rates provided in the VA Tech proposal. The cost of this work shall not exceed $180,705.

The total value of this order is $5,589,243.

Total net item value excluding tax USD       5,589,243.00

AS PER YOUR RESPONSE TO OUR RFP # 060407LF, YOUR PROPOSAL DATED 10/26/07.

-Unless RG&E receives notice, within 48 hours of [Vendor's] receipt of a facsimile of the Purchase Order, Terms and Conditions and other documents related to the product or service provided (collectively, "the Terms"), of [Vendor's] objection to the Terms, the facsimile shall be sufficient to bind the parties, and no further document shall be necessary to establish the relationship.
-The provisions of 41 CFR 60-1.4 are hereby incorporated by reference.
-Your quotation / proposal is incorporated into this Purchase Order only to the following extent: price, quantity, work scope, specification, freight terms and payment terms.  Supplier's performance hereunder shall be deemed acceptance of owner's terms and conditions.
-This purchase order is subject to the terms and conditions printed on the last page hereof and to any further instructions, specifications and other materials made a part hereof by the buyer.

Energy East Operating Company ("Company") - Standard Purchase Terms and Conditions

**1. Services & Deliverables** - Seller agrees to perform the services ("Services") and/or provide the goods or Service deliverables (collectively referred to as "Goods"), described in any purchase order, in accordance with the applicable purchase order, scope of work and with these Terms and Conditions ("Agreement"). Upon acceptance of a purchase order, shipment of Goods or commencement of a Service, Seller shall be bound by the provisions of this Agreement, including all provisions set forth on the face of any applicable purchase order, whether Seller acknowledges or otherwise signs this Agreement or the purchase order, unless Seller objects to such terms in writing prior to shipping Goods or commencing Services.

This writing does not constitute a firm offer within the meaning of Section 2-205 of the Uniform Commercial Code, and may be revoked at any time prior to acceptance. Any terms or conditions contained in any acknowledgment, invoice or other communication of Seller, which are inconsistent with the terms and conditions herein, are hereby rejected. To the extent that this Agreement might be treated as an acceptance of Seller's prior offer, such acceptance is expressly made on condition of assent by Seller to the terms hereof and shipment of the Goods or beginning performance of any Services by Seller shall constitute such assent. Company hereby reserves the right to reschedule any delivery or cancel any purchase order issued at any time prior to shipment of the Goods or prior to commencement of any Services. Company shall not be subject to any charges or other fees as a result of such cancellation.

**2. Delivery** - Time is of the essence. Delivery of Goods shall be made pursuant to the schedule, via the carrier and to the place specified on the face of the applicable purchase order. Company reserves the right to return, shipping charges collect, all Goods received in advance of the delivery schedule. If no delivery schedule is specified, the order shall be filled promptly and delivery will be made by the most expeditious form of land transportation. If no method of shipment is specified in the purchase order, Seller shall use the least expensive carrier. In the event Seller fails to deliver the Goods within the time specified, Company may, at its option, decline to accept the Goods and terminate the Agreement or may demand its allocable fair share of Seller's available Goods and terminate the balance of the Agreement. Seller shall package all items in suitable containers to permit safe transportation and handling. Each delivered container must be labeled and marked to identify contents without opening and all boxes and packages must contain packing sheets listing contents. Company's purchase order number must appear on all shipping containers, packing sheets, delivery tickets and bills of lading.

For Goods bought "delivered" or "F.O.B. destination," Seller shall prepay freight or other destination charges. For Goods bought "F.O.B. point of origin" or "F.O.B. Seller's Plant" on which the Seller prepays the freight and invoices Company, the Seller shall include the transportation charges on the invoice and attach the freight bill and bill of lading. If the freight bill is not attached, the Seller must show on the invoice, in addition to the transportation charges, the weight of the shipment, the freight rate charged, the name of the carrier, and attach to the invoice a copy of the bill of lading only. Company may withhold payment of Seller's invoice until the date that this condition has been fulfilled and reserves the right to take a cash discount from this later date. On shipments originating in the U.S., the "non-recourse" clause on the bill of lading covering the shipment must not be signed and any overcharges that may accrue will be for the Seller's account.

**3. Identification, Risk of Loss & Destruction of Goods** - Identification of the Goods shall occur in accordance with Section 2-501 of the Uniform Commercial Code. Seller assumes all risk of loss until receipt by Company. Title to the Goods shall pass to Company upon receipt by it of the Goods at the designated destination. If the Goods ordered are destroyed prior to title passing to Company, Company may at its option cancel the Agreement or require delivery of substitute Goods of equal quantity and quality. Such delivery will be made as soon as commercially practicable. If loss of Goods is partial, Company shall have the right to require delivery of the Goods not destroyed.

**4. Payment** - As full consideration for the performance of the Services, delivery of the Goods and the assignment of rights to Company as provided herein, Company shall pay Seller (i) the amount agreed upon and specified in the applicable purchase order, or (ii) Seller's quoted price on date of shipment (for Goods), or the date Services were started (for Services). Applicable taxes and other charges such as shipping costs, duties, customs, tariffs, imposts and government-imposed surcharges shall be stated separately on Seller's invoice. Payment is made when Company's check is mailed. Payment shall not constitute acceptance. All personal property taxes assessable upon the Goods prior to receipt by Company of Goods conforming to the purchase order shall be borne by Seller. Seller shall invoice Company for all Goods delivered and all Services actually performed. Each invoice submitted by Seller must be provided to Company within ninety (90) days of completion of the Services or delivery of Goods and must reference the applicable purchaseorder, and Company reserves the right to return all incorrect invoices. Company will receive a 2% discount of the invoiced amount for all invoices that are submitted more than ninety (90) days after completion of the Services or delivery of the Goods. Unless otherwise specified on the face of a purchase order, Company shall pay the invoiced amount within sixty (60) days after receipt of a correct invoice. Seller will receive no royalty or other remuneration on the production or distribution of any products developed by Company or Seller in connection with or based on the Goods or Services provided.

**5. Warranties**
**5.1 Services** - Seller represents and warrants that all Services shall be completed in a professional, workmanlike manner, with the degree of skill and care that is required by current, good and sound professional procedures. Further, Seller represents and warrants that the Services shall be completed in accordance with applicable specifications and shall be correct and appropriate for the purposes contemplated in this Agreement. Seller represents and warrants that the performance of Services under this Agreement will not conflict with, or be prohibited in any way by, any other agreement or statutory restriction to which Seller is bound.
**5.2 Goods** - Seller warrants that all Goods provided will be new and will not be used or refurbished. Seller warrants that all Goods delivered shall be free from defects in materials and workmanship and shall conform to all applicable specifications for a period of fifteen (15) months from the date of delivery to Company or for the period provided in Seller's standard warranty covering the Goods, whichever is longer. Seller hereby agrees that it will make spare parts available to Company for a period of five (5) years from the date of shipment at Sellers then current price, less applicable discounts. Additionally, Goods purchased shall be subject to all written and oral express warranties made by Seller's agents, and to all warranties provided for by the New York Commercial Code. All warranties shall be construed as conditions as well as warranties and shall not be exclusive. Seller shall furnish to Company Seller's standard warranty and service guarantee applicable to the Goods.

If Company identifies a warranty problem with the Goods during the warranty period, Company will promptly notify Seller of such problems and will return the Goods to Seller, at Seller's expense. Within five (5) business days of receipt of the returned Goods, Seller shall, at Company's option, either repair or replace such Goods, or credit Company's account for the same. Replacement and repaired Goods shall be warranted for the remainder of the warranty period or six (6) months, whichever is longer.

**6. Inspection** - Company shall have a reasonable time after receipt of Goods or Service deliverables and before payment to inspect them for conformity hereto, and Goods received prior to inspection shall not be deemed accepted until Company has run an adequate test to determine whether the Goods conform to the specifications hereof. Use of a portion of the Goods for the purpose of testing shall not constitute an acceptance of the Goods. If Goods tendered do not wholly conform with the provisions hereof, Company shall have the right to reject such Goods. Nonconforming Goods will be returned to Seller freight collect and risk of loss will pass to Seller upon Company's delivery to the common carrier.

**7. Independent Contractor** - Company is interested only in the results obtained under this Agreement; the manner and means of achieving the results are subject to Seller's sole control. Seller is an independent contractor for all purposes, without express or implied authority to bind Company by contract or otherwise. Neither Seller nor its employees, agents or subcontractors ("Seller's Assistants") are agents or employees of Company, and therefore are not entitled to any employee benefits of Company, including but not limited to, any type of insurance. Seller shall be responsible for all costs and expenses incident to performing its obligations under this Agreement and shall provide Seller's own supplies and equipment.

**8. Seller Responsible for Taxes and Records** - Seller shall be solely responsible for filing the appropriate federal, state and local tax forms, including, without limitation, a Schedule C or a Form 1120, and paying all such taxes or fees, including estimated taxes and employment taxes, due with respect to Seller's receipt of payment under this Agreement. Seller further agrees to provide Company with reasonable assistance in the event of a government audit. Company shall have no responsibility to pay or withhold from any payment to Seller under this Agreement, any federal, state or local taxes or fees. Company will regularly report amounts paid to Seller by filing Form 1099-MISC with the Internal Revenue Service.

**9. Insurance** - Seller shall be solely responsible for maintaining and requiring Seller's Assistants to maintain such adequate health, auto, workers' compensation, unemployment compensation, disability, liability, and other insurance, as is required by law or as is the common practice in Seller's and Seller's Assistants' trades or businesses, whichever affords greater coverage. Upon request, Seller shall provide Company with certificates of insurance or evidence of coverage before commencing performance under this Agreement. Seller shall provide adequate coverage for any Company property under the care, custody or control of Seller or Seller's Assistants.

**10. Indemnity** - Seller shall indemnify, hold harmless, and at Company's request, defend Company and its affiliates, and their respective officers, directors, customers, agents and employees, against all claims, liabilities, damages, losses and expenses, including attorneys' fees and cost of suit ("Claims") arising out of or in any way connected with the Goods or Services provided by Seller or Seller's Assistants under this Agreement, except for and to the extent that any Claims arise from or are attributable to the negligence of the Company or its employees or agents. Should Company's use, or use by its subcontractors, of any Goods or Services purchased from Seller be enjoined, be threatened by injunction, or be the subject of any legal proceeding, Seller shall, at its sole cost and expense, either (a) substitute fully equivalent no infringing Goods or Services; (b) modify the Goods or Services so that they no longer infringe but remain fully equivalent in functionality; (c) obtain for Company or subcontractors the right to continue using the Goods or Services; or (d) if none of the foregoing is possible, refund all amounts paid for the infringing Goods or Services.

**11. Confidentiality** - Seller may acquire knowledge of Company Confidential Information (as defined below) in connection with its performance hereunder and agrees to keep such Company Confidential Information in confidence during and following termination or expiration of this Agreement. "Company Confidential Information" includes but is not limited to all information, whether written or oral, in any form, including without limitation, information relating to the trade secrets, business plans, vendors, finances, personnel data, Work Product (as defined herein), customer data of Company's affiliates, customer account data of Company's affiliates, and other material or information considered proprietary by Company or affiliates relating to the current or anticipated business or affairs of Company or it's affiliates which is disclosed directly or indirectly to Seller. In addition, Company Confidential Information means any third party proprietary or confidential information disclosed to Seller in the course of providing Services or Goods to Company. Company Confidential Information does not include any information (i) which Seller lawfully knew without restriction on disclosure before Company disclosed it to Seller, (ii) which is now or becomes publicly known through no wrongful act or failure to act of Seller, (iii) which Seller developed independently without use of the Company Confidential Information, as evidenced by appropriate documentation, or (iv) which is hereafter lawfully furnished to Seller by a third party as a matter of right and without restriction on disclosure. In addition, Seller may disclose Confidential Information which is required to be disclosed pursuant to a requirement of a government agency or law so long as Seller provides prompt notice to Company of such requirement prior to disclosure.

Seller agrees not to copy, alter or directly or indirectly disclose any Company Confidential Information. In no event will Seller use less than the degree of care and means that it uses to protect its own information of like kind, but in any event not less than reasonable care to prevent the unauthorized use of Company Confidential Information.
Seller further agrees not to use the Company Confidential Information except in the course of performing hereunder and will not use such Company Confidential Information for its own benefit or for the benefit of any third party. All Company Confidential Information is and shall remain the property of Company. Upon Company's written request or the termination of this Agreement, Seller shall return, transfer or assign to Company all Company Confidential Information, including all Work Product, as defined herein, and all copies thereof.

**12. Termination** - Company may terminate this Agreement upon written notice to Seller if Seller fails to perform or otherwise breaches this Agreement, files a petition in bankruptcy, becomes insolvent, or dissolves. In the event of such termination, Company shall pay Seller for the portion of the Services satisfactorily performed and those conforming Goods delivered to Company through the date of termination, less appropriate offsets, including any additional costs to be incurred by the Company in completing the Services.
Company may terminate this Agreement, or any Service(s), for any or no reason upon thirty (30) days written notice to Seller. Seller shall cease to perform Services and/or provide Goods under this Agreement on the date of termination specified in such notice. In the event of such termination, Company shall be liable only for those Services satisfactorily performed and those conforming Goods delivered to Company through the date of termination, less appropriate offsets.
Seller may terminate this Agreement upon written notice to Company if Company fails to pay Seller within sixty (60) days after Seller notifies Company in writing that payment is past due.
Upon the expiration or termination of this Agreement for any reason: (a) each party will be released from all obligations to the other arising after the date of expiration or termination, except for those which by their terms survive such termination or expiration; and (b) Seller will promptly notify Company of all Company Confidential Information or any Work Product in Seller's possession and, at the expense of Seller and in accordance with Company's instructions, will promptly deliver to Company all such Company Confidential Information and/or Work Product.

**13. Remedies** - If Seller breaches this Agreement, Company shall have all remedies available by law and at equity. For the purchase of Goods, Seller's sole remedy in the event of breach of this Agreement by Company shall be the right to recover damages in the amount equal to the difference between market price at the time of breach and the purchase price specified in the Agreement. No alternate method of measuring damages shall apply to this transaction. Seller shall have no right to resell Goods for Company's account in the event of wrongful rejection, revocation of acceptance, failure to make payment or repudiation by Company and any resale so made shall be for the account of Seller.

**14. Force Majeure** - Company shall not be liable for any failure to perform including failure to (i) accept performance of Services or, (ii) take delivery of the Goods as provided caused by circumstances beyond its control which make such performance commercially impractical including, but not limited to, acts of God, fire, flood, acts of war, government action, accident, labor difficulties or shortage, inability to obtain materials, equipment or transportation. In the event Company is so excused, either party may terminate the Agreement and Company shall at its expense and risk, return any Goods received to the place of shipment.

**15. Attorneys' Fees** - In any action to enforce this Agreement, the prevailing party shall be entitled to recover all court costs and expenses and reasonable attorneys' fees, in addition to any other relief to which it may be entitled.

**16. Severability** - If any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**17. Limitation of Liability** - IN NO EVENT SHALL COMPANY BE LIABLE TO SELLER OR SELLER'S ASSISTANTS, OR ANY THIRD PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, WHETHER OR NOT COMPANY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

**18. Compliance With Laws**
**18.1 General** - Seller shall comply fully with all applicable federal, state and local laws in the performance of this Agreement including, but not limited to, all applicable employment, tax, export control and environmental laws.
**18.2 Equal Employment Opportunity** - Some or all of the Goods and Services provided hereunder may be used in a contract with the federal government and, therefore, may be subject to the requirements of Executive Order 11246, the Rehabilitation Assistance Act. Pursuant to these requirements, the Equal Employment Opportunity Clauses found at 41 Code of Federal Regulations sections 60-1.4(a) (1-7), 60-250.4(a-m) and 60-741.5 (a) (1-6)are incorporated herein by reference as though set forth at length, and made an express part of this Agreement. If applicable, Seller will comply with the following Federal Acquisition Regulations: (i)52.222-26 "Equal Opportunity", (ii) 52.222-35 "Affirmative Action for Special Disabled and Vietnam Veterans", (iii) 52.222-36 "Affirmative Action for Handicapped Workers."
**18.3 Small Business Plan Requirements** - Some or all of the Goods and Services provided hereunder may be used in a contract with the federal government and, therefore, may be subject to the requirements of FAR section 52.219. Pursuant to FAR 52.219.9, if Seller (i) is not considered a Small Business (as the term is defined in section 3 of the Small Business Act) and (ii) is providing Goods or Services under this Agreement in an amount greater than or equal to $500,000, and (iii) is subcontracting a portion of the Goods or Services from a third party, Seller agrees to submit to Company a Small Business Plan or letter stating that Seller does not have a Small Business Plan and listing the approximate dollar amount to be subcontracted.
**18.4 Hazardous Materials** - If Goods include hazardous materials, Seller represents and warrants that Seller understands the nature of any hazards associated with the manufacture, handling and transportation of such hazardous materials.
**18.5 Customs** - Upon Company's request, Seller will promptly provide Company with a statement of origin for all Goods and United States Customs documentation for Goods wholly or partially manufactured outside of the United States.
**18.6 Executive Order 13201 Compliance.** - The contractor agrees to comply with the provisions of 29 CFR part 470.
**18.7 Connecticut Requirements.** - Connecticut General Statutes Sections 4a-60a and Sections 46a-56, 46a-68c, and 46a-68f and Executive Order No. 3 (6/16/71), Executive Order No.17 (2/15/73), Executive Order No. 16 (8/4/99), and Executive Order No.7B (11/16/05).

**19. Audit** - For Goods or Services ordered by and billed to Company on a cost reimbursable basis, Seller shall maintain complete and accurate records of and supporting documentation for the amounts billable to and payments made by Company hereunder, in accordance with generally accepted accounting principles applied on a consistent basis, and shall retain such records for the duration of this Agreement and for a period of two (2) years thereafter. Upon reasonable prior notice at Seller's place of business, Company shall have the right to audit such records and accounts for up to two (2) years after payment of the final invoice for the Goods or Services.

**20. Miscellaneous** -
**20.1** Seller may not assign this Agreement or any of its rights or obligations under this Agreement, without the prior written consent of Company. Any assignment or transfer without such written consent shall be null and void. A waiver of any default hereunder or of any term or condition of this Agreement shall not be deemed to be a continuing waiver or a waiver of any other default or any other term or condition.
**20.2** This is not an exclusive agreement. Company is free to engage others to perform Services or provide Goods the same as or similar to Seller's. Seller is free to, and is encouraged to, advertise, offer and provide Seller's Services and/or Goods to others; provided however, that Seller does not breach this Agreement.
**20.3** Any obligations and duties which by their nature extend beyond the expiration or termination of this Agreement shall survive the expiration or termination of this Agreement.
**20.4** This Agreement shall be construed in accordance with, and disputes shall be governed by, the laws of the State in which the Company's principal office is located. The applicability of the UN Convention on Contracts for the International Sale of Goods is hereby expressly waived by the parties and it shall not apply to the terms and conditions of this Agreement.
**20.5** This Agreement is the complete, final and exclusive statement of the terms of the agreement between the parties and supersedes any and all other prior and contemporaneous negotiations and agreements, whether oral or written, between them relating to the subject matter hereof. This Agreement may not be varied, modified, altered, or amended except in writing, including a purchase order or a change order issued by Company, signed by the parties. The terms and conditions of this Agreement shall prevail notwithstanding any variance with the terms and conditions of any acknowledgment or other document submitted by Seller. Notwithstanding the foregoing, this Agreement will not supersede or take the place of any written agreement which is signed by both parties and covers the same subject matter as this Agreement or its related purchase orders.
**20.6** Seller consents to venue in any competent state or federal court sitting in the municipality in which the Company's principal office is located.