# EXHIBIT C



KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528
t 404 815 6500  f 404 815 6555

May 27, 2020

direct dial 404 815 6502
direct fax 404 541 3291
lmann@kilpatricktownsend.com

**VIA EMAIL**

Jeffrey A. Rosenbloom
General Counsel, NYSEG/RG&E
Avangrid Networks, Inc.
89 East Avenue
Rochester, New York  14649

Re:   Costs Due to Andritz for Termination of RG&E Station 2 New Unit Project

Dear Mr. Rosenbloom:

I am outside counsel for Andritz Hydro Canada Inc. ("Andritz"), a subsidiary of Andritz AG, whose North American legal headquarters is in the Atlanta area.  I am writing in response to your letter of April 16, 2020, in which you state that RG&E denies liability for 1,126,970.48 CAD in hedging costs incurred by Andritz on this Project.

Initially, thank you for acknowledging that the Project has been terminated.  Termination is clearly appropriate given the 12-year suspension of work, which is far longer than could have ever been anticipated when entering into the Contract.  Andritz and I disagree strongly, however, with the statement in your letter that Andritz's request for the hedging costs it incurred is "illusory on its face."  There is nothing illusory about those costs.

As explained in the attachments to Andritz's March 20, 2020 letter, the hedging costs incurred by Andritz during the suspension period are completely real, hard-dollar costs incurred by Andritz as a result of RG&E's prolonged suspension of this Project.  In your letter, you acknowledge that RG&E suspended the Project under Paragraph 18 of the February 2008 agreement. Paragraph 18 explicitly states that Andritz is entitled to recover "all costs" it incurs as a result of RG&E's suspension of the work.  The practice of hedging to protect against currency fluctuations is a common practice on international contracts like this one between RG&E and Andritz.  The costs incurred by Andritz for hedging are no different than any other costs incurred on a project, and are not unrecoverable simply because they arise from a contract with a third party.  By way of example, costs incurred for materials arise from contracts with third parties, and costs for subcontractors arise from contracts with third parties.  Furthermore, as recognized by the court in *Long Island Lighting Co. v. Assessor for the Town of Brookhaven*, "it is well settled that financing costs … constitute 'expenditures that reasonably and necessarily are to be expected'" on a construction project.  202 A.D. 2d 32, 41, 616 N.Y.S.2d 375, 381 (1994).  The financing costs at issue in that case are no different than the hedging costs incurred by Andritz on this Contract.

US2008 16936167 1

Jeffrey A. Rosenbloom
May 27, 2020
Page 2

RG&E was fully aware that Andritz was incurring these costs and expected to be compensated for them. Andritz's February 13, 2009 letter to RG&E quantified Andritz's costs up to that point as $1,342,315, but explicitly stated that this $1,342,315 did not include "costs associated with foreign currency hedging." Andritz also notified RG&E that it would continue incurring hedging costs during the period of suspension and, furthermore, that these costs would increase if the Project was cancelled. The most relevant portion of the one-page discussion of hedging costs in Andritz's February 13, 2009 letter explained that:

> While the Rochester project is in suspension status, Andritz Hydro's current position regarding these contracts, is to rollover the contracts to future dates as they become due. There is a relatively minor transaction cost associated with this, calculated on the difference between the lending rates of the two currencies involved.
>
> If the project was to move from suspension status to cancellation, the current real cost to Andritz Hydro is approximately $450-500,000 USD. This is an approximate cost based on market rates of Feb.5/09 and will fluctuate until the date actual instructions are given to cancel the contracts. As a general rule, as the USD improves against the CDN dollar, the cost increases. If the Euro improves against CDN dollar, it will decrease cancellation costs.
>
> Until we are given specific cancellation costs we will maintain the hedge contracts just as we maintain any materials specifically in hand for the project. When you determine cancellation is necessary we will advise you of the actual exposure. Until then we hope that you will get the approvals to continue in July, 2009 and the FX exchange costs remain only as minor transaction fees.

Andritz provided supplemental information about its suspension costs by letter dated March 10, 2019. That letter again stated that the $1,342,315 incurred by Andritz to that point did not include "costs associated with foreign currency hedging." Andritz also warned RG&E about hedging costs that Andritz was incurring by letter dated April 23, 2012.

Despite being fully aware that Andritz was incurring hedging costs and expected to be reimbursed for them, RG&E elected to continue the suspension of the Project and, moreover, never took the position that it would not pay these hedging costs. To the contrary, RG&E acquiesced in them. And regardless, RG&E is liable for these costs under Paragraph 18 of the Contract.

The cases cited in your letter do not support RG&E's position and instead reaffirm RG&E's liability. Initially, all these cases deal with lost profits, which are often viewed with disfavor by courts, but even in cases involving lost profits, lost profits are recoverable "<u>when the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, [because] the damages sought are general damages,</u>" not consequential ones. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) (emphasis added). On the Project at issue here, Andritz is simply seeking to recover the costs RG&E agreed

US2008 16936167 1

Jeffrey A. Rosenbloom
May 27, 2020
Page 3

to pay pursuant to Paragraph 18 of the Contract, so those costs are general damages,[1] not consequential damages. And "[i]t has long been established in New York that a breaching party is liable for all direct and proximate damages which result from the breach" so long as they are not "merely speculative, possible, and imaginary." *Id*. at 110.

The Court of Appeals' decision in *Biotronik AG v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799 (2014) also supports Andritz's position. In that case, the Court of Appeals held that lost profits are recoverable as general damages when they are the natural and probable consequence of the breach of a contract. The Court of Appeals explained that the "distinction at the heart of these cases is whether the lost profits flowed directly from the contract itself or were, instead, the result of a separate agreement with a nonparty." Applying that rule, the court ruled that the lost profits at issue in that case were general damages, not consequential damages. Applying that same rule here, the hedging costs that Andritz is seeking to recover are general damages because they are direct, actual out-of-pocket costs resulting from RG&E's suspension of the Contract and Paragraph 18 of the Contract expressly entitles Andritz to recover "all costs" incurred as a result of a suspension or termination.

I therefore ask that you reconsider your position and pay the money due to Andritz. Andritz will consider any reasonable settlement offers, but they must take into account the fact that Andritz is out of pocket 1,126,970.48 CAD as a result of RG&E's prolonged suspension of this Project. Andritz will not abandon its pursuit of these costs.

I look forward to hearing from you. I have copied my partner Fred Whitmer, who is admitted to practice in New York and may be involved going forward.

Best regards,

R. Lee Mann, III

RLM/pam

cc: Fred Whitmer, Esq.

---

[1] Because Andritz is claiming costs to which it is expressly entitled under Paragraph 18, the limitation in Paragraph 41 on types of recoverable "damages" should not be applicable at all. Even if it were, however, the hedging costs incurred by Andritz would be general damages, not consequential damages.

US2008 16936167 1