UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDRITZ HYDRO CANADA INC., the successor to
VA TECH HYDRO CANANDA, INC.,

        Plaintiff,

vs.

ROCHESTER GAS AND ELECTRIC CORPORATION,

        Defendant.

Civil Action No.:
6:20-cv-06772-FPG

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### ROCHESTER GAS AND ELECTRIC CORPORATION'S RULE 12(b) MOTION TO DISMISS

WARD GREENBERG HELLER & REIDY LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

Joseph G. Curran
Joshua M. Agins
Michael J. Adams,
*of counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    ANDRITZ FAILS TO STATE A CLAIM FOR
        BREACH OF CONTRACT ..................................................................................2

        A.  The Supplier Agreement Does Not
            Permit "Termination by Silence" .............................................................3

        B.  RG&E's April 2020 Letter Does Not
            Confirm Termination by RG&E .............................................................4

        C.  Paragraph 18 Does Not Permit Recovery of
            Currency Hedging Losses ........................................................................6

    II.   THE SUPPLIER AGREEMENT PRECLUDES
        ANDRITZ'S QUASI-CONTRACT CLAIMS ........................................................8

    III.  ANDRITZ DOES NOT OPPOSE DISMISSAL OF
        ITS CLAIM FOR DECLARATORY JUDGMENT ...................................................9

CONCLUSION ..............................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582
(E.D.N.Y. 2000) ...................................................................................................4

*Aramony v. United Way of Am.*, 254 F.3d 403 (2d Cir. 2001)............................7

*Arc Electrical Constr. Co. v. George A. Fuller Co.*, 24 N.Y.2d 99 (1969) .........7

*Boston Concessions Group v. Criterion Ctr. Corp.*, 250 A.D.2d 435
(1st Dep't 1998)...................................................................................................2

*Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) ...............................9

*Corallo v. Merrick Cent. Carburetor, Inc.*, 733 F.2d 248 (2d Cir. 1984)............2

*Hellenic Lines v. Gulf Oil Corp.*, 340 F.2d 398 (2d Cir. 1965) ...........................4

*Intl. Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995) ........2

*John William Costello Assocs. v. Standard Metals Corp.*,
99 A.D.2d 227 (1st Dep't 1984) ..........................................................................4

*Macintyre v. Moore*, 335 F. Supp. 3d 402 (W.D.N.Y. 2018) ..............................8

*M&T Bank Corp. v. LaSalle Bank N.A.*, 852 F. Supp. 2d 324
(W.D.N.Y. 2012) ..............................................................................................2, 6

*MVP Health Plan, Inc. v. OptumInsight, Inc.*,
2014 U.S. Dist. LEXIS 153748 (N.D.N.Y. Oct. 29, 2014) .................................8

*Natl. Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
861 F. Supp. 2d 344 (S.D.N.Y. 2012).................................................................3

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ...................................................2

*Verus Pharms., Inc. v. AstraZeneca AB*, 2010 U.S. Dist.
LEXIS 83581 (S.D.N.Y. Aug. 16, 2010).............................................................8

*VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372
(S.D.N.Y. 2014)...................................................................................................2

*Westchester Resco Co. v. New England Reins.* 648 F. Supp. 842
(S.D.N.Y. 1986)...................................................................................................4

*Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490 (S.D.N.Y. July 17, 2002) ......................3

## PRELIMINARY STATEMENT

Andritz Hydro Canada, Inc.'s ("Andritz") opposition to Rochester Gas and Electric Corporation's ("RG&E") motion to dismiss streamlines the issues and actually reinforces the need for dismissal. The parties do not dispute the existence of a binding contract. Nor do the parties dispute that Paragraph 18 of that contract provides *only* RG&E the right to terminate. And even if Paragraph 18 could be construed to require reimbursement of Andritz's alleged hedging losses (it cannot), Andritz concedes it cannot recover those alleged losses unless RG&E terminated. So, the motion easily turns on the fact that RG&E did not terminate and thus did not trigger the cost recovery mechanism in Paragraph 18.

Andritz fails to plausibly allege termination by RG&E for two reasons. *First*, the contract's 24-hour termination requirement and no-waiver clause squarely foreclose Andritz's contention that RG&E "terminated by silence" by failing to respond to Andritz's repeated termination threats. In other words, the contract unambiguously requires affirmative termination on notice, and requires a writing signed by both parties to modify the contract. Mere "silence" is contractually ineffectual. This fact, in and of itself, should end the inquiry. *Second*, Andritz's contention that RG&E's April 2020 letter constitutes evidence that RG&E had terminated also fails because Andritz badly mischaracterizes the plain terms of that letter. For these reasons, the unambiguous terms of the contract and documentary evidence require dismissal of the breach of contract claim.

The rest of the Complaint folds easily from there. Andritz does not oppose dismissal of its declaratory judgment claim. And Andritz's "quasi-contract" claims fail as a matter of law because the parties agree that their written contract governs this dispute. That the contract's terms belie Andritz's breach claim does not open the door to quasi-contract recovery. Indeed, established authority holds that under these circumstances, a plaintiff cannot pursue quasi-contract claims under the guise of "pleading in the alternative."

1

**ARGUMENT**

I. **ANDRITZ FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

As a starting point, the Court can quickly dispense with Andritz's characterization of the law regarding its pleading obligations. Andritz essentially contends that on a Rule 12(b)(6) motion, the Court must blindly accept as true the assertion that RG&E terminated the contract, irrespective of what the contract says regarding termination. But that is not the law, even on a Rule 12(b)(6) motion. *See VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379 (S.D.N.Y. 2014) (presumption does not extend to allegations "contradicted by more specific allegations or documentary evidence."); *see generally Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered"); *Intl. Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (the court is not constrained to accept allegations in the complaint with respect to the construction of documents integral or attached to the complaint). Likewise, the cases cited by Andritz for the notion that termination is a fact issue stand for no such sweeping proposition. Dkt. 15 at 22-23[1] (*citing Boston Concessions Group v. Criterion Ctr. Corp.*, 250 A.D.2d 435, 436 (1st Dep't 1998) (finding questions of fact including with respect to "whether the agreement ever went into effect"); *Corralo v. Merrick Cent. Carburetor, Inc.*, 733 F.2d 248, 250 (2d Cir. 1984) (involving factual dispute because union denied receiving written termination of collective bargaining agreement).

Where, as here, the contract on its face belies the claim, pre-answer dismissal is proper. *See, e.g.*, *M&T Bank Corp. v. LaSalle Bank N.A.*, 852 F. Supp. 2d 324, 334 (W.D.N.Y. 2012)

---

[1] RG&E's page references in Docket entries are to the docket page number rather than the document's original pagination.

2

(dismissing with prejudice all claims on Rule 12(b)(6) motion because "each of the claims fails as a matter of law" based on plain terms of contract); *Natl. Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 364 (S.D.N.Y. 2012) (granting motion to dismiss breach of contract claims where defendants substantially complied with termination and cure provisions); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 495 (S.D.N.Y. July 17, 2002) (dismissing in part breach of contract claim where contract did not provide for the obligation allegedly breached and holding that plaintiff's allegations regarding his contractual rights were insufficient).

### A. The Supplier Agreement Does Not Permit "Termination by Silence"

The contract's unambiguous terms foreclose Andritz's contention that RG&E "terminated by silence." Dkt. 15 at 21-22. Paragraph 18 does not permit termination "by silence" but rather explicitly requires "twenty-four (24) hours notice" to effectuate a termination. Dkt. 1-1 at p. 11, ¶ 18. Termination provisions must be enforced as written. *See Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996). Nothing in Paragraph 18 permits Andritz to issue ultimatums or force RG&E to respond to termination threats by Andritz, nor does the contract support Andritz's assertion (with no citation) that "RGE had an obligation to further communicate" (Dkt. 15 at p. 22) after receiving letters from Andritz that hinted (but did not explicitly state) that Andritz would take the position that it could recover hedging losses it *might* incur in the future. Moreover, Paragraph 3's "no waiver" clause explicitly precludes waiver in the absence of a *writing* signed by the parties. Dkt. 1-1 at p. 4, ¶ 3. Importantly, Andritz does not (and cannot) argue that these provisions are ambiguous; rather, Andritz attempts to make its "termination by silence" argument as if these unambiguous contractual provisions do not exist.

The cases cited by Andritz for the proposition that "'silence' under circumstances where one would be expected to object can be deemed acceptance" (Dkt. 15 at pp. 21-22) do not alter

this analysis, because they involve the issue of contract *formation*. For example, in *Hellenic Lines v. Gulf Oil Corp.*, plaintiff conditioned acceptance of a written agreement on defendant's acceptance of a separate oral agreement, and the court evaluated whether defendant's failure to object to plaintiff's letter regarding this conditional acceptance constituted an admission by silence that the parties had entered into a separate oral agreement. *Hellenic Lines v. Gulf Oil Corp.*, 340 F.2d 398, 400-401 (2d Cir. 1965).[2] In *John William Costello Assocs. v. Standard Metals Corp.*, the court evaluated whether defendant accepted the terms of a proposed letter agreement by utilizing the plaintiff placement agency to hire a new employee. *John William Costello Assocs. v. Standard Metals Corp.*, 99 A.D.2d 227, 231 (1st Dep't 1984). And in *Westchester Resco Co. v. New England Reins.*, the court evaluated whether industry custom and practice suggested that the parties entered into an agreement. *Westchester Resco Co. v. New England Reins.* 648 F. Supp. 842, 846 (S.D.N.Y. 1986). The concept of contract *formation* has no bearing here, where a binding contract indisputably exists, and the dispositive question is whether the unambiguous terms of that contract foreclose Andritz's argument.

### B. RG&E's April 2020 Letter Does Not Confirm Termination by RG&E

Andritz also appears to contend that RG&E's April 16, 2020 letter constitutes evidence that RG&E had terminated the agreement pursuant to Paragraph 18. But rather than quote from RG&E's April 16, 2020 letter, Andritz improperly characterizes that communication as follows: "RGE, in a letter from its General Counsel, dated April 16, 2020, acknowledged to Andritz that it terminated the Agreement for convenience pursuant to Section 18 of the Agreement." Dkt. 15 at

---

[2] Notably, *Hellenic Lines* dealt with federal maritime law, not New York law. *Hellenic Lines*, 340 F.2d at 402; *see also Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 613 (E.D.N.Y. 2000) (distinguishing *Hellenic Lines* based on difference between maritime law and New York law).

pp. 16-17; *see also id.* at p. 21. RG&E's letter decidedly did not state that RG&E had elected to terminate. In fact, it says the opposite:

> ***Your*** letter of March 20 ***declares*** the parties General Terms & Conditions, Station 2 New Unit Project Supply of Generating Unit dated February 8, 2008 by and between RG&E and VA Tech Hydro Canada Inc. (the "February 2008 Agreement") ***to be terminated*** and asserts Andritz's entitlement to full and final termination costs of 1,126,970.48 CAD to cover "Foreign Exchange fluctuations allocated to the Contract . . . While ***RG&E has never issued a termination notice*** under the February 2008 Agreement, we understand that ***Andritz has*** hereby confirmed ***that it has terminated*** the Agreement.

Dkt. 1-8 at p. 4 (emphasis supplied). Acknowledging Andritz's purported termination is a far cry from confirming termination by RG&E pursuant to Paragraph 18, which is not even referenced in the letter within the context of its discussion regarding termination.[3] This documentary evidence, which Andritz attached to its Complaint, belies the claim.

Importantly, although Schedule C to the contract purports to give Andritz its own right of termination, Andritz does *not* base its claim on Schedule C; in fact, Andritz pejoratively refers to Schedule C as mere "boilerplate"—never mind the fact that Andritz drafted Schedule C. Andritz continues to avoid Schedule C because that provision limits termination-related recovery to costs for "Work," which the Proposal defines as the supply of the "Goods" and "Services," which are in turn limited to the material, equipment and machinery required to produce the Goods and the commissioning and supervision of Services. Dkt. 9-3 at p. 42, ¶ 1.1. In other words, Andritz attempts to shoehorn its claim into a Paragraph 18 termination by RG&E because Andritz recognizes that a Schedule C termination by Andritz would permit even narrower recovery than

---

[3] To the extent that Andritz alleges the April 16, 2020 letter constitutes a termination notice by RG&E, it is mistaken. As described, the April 16 letter simply acknowledges that Andritz, not RG&E, terminated the Supplier Agreement. Dkt. 1-8 at p. 4. Moreover, the notion that the April 16 letter constitutes a termination notice is belied by the March 20, 2020 letter in which Andritz unilaterally deemed the Supplier Agreement terminated.

Paragraph 18. But RG&E did not terminate, and the termination-recovery provision of Paragraph 18 is not triggered. Andritz's breach of contract claim fails on this basis alone.

### C. Paragraph 18 Does Not Permit Recovery of Currency Hedging Losses

In order to dismiss the Complaint, the Court need not decide whether Paragraph 18 permits recovery of losses allegedly incurred by Andritz to unwind third-party hedging contracts. Indeed, because Paragraph 18 is not triggered in the absence of termination by RG&E, the scope of Paragraph 18 recovery is purely academic. Nonetheless, Andritz's limitless construction of Paragraph 18 to include recovery of hedging losses from contracts outside of RG&E's control fails for several reasons.

Paragraph 18 says *nothing* about currency risk; neither the words "currency" nor "hedge" nor anything of the sort are mentioned there. In fact, nothing in the contract indicates that RG&E would incur liability for seven-figure hedging losses—approximately 20% of the total purchase price—pursuant to hedging contracts between Andritz and third parties. And the phrase "all costs incurred" need not and should not be read so broadly because that phrase (and Paragraph 18 more generally) must be placed in context with other provisions of the contract. *See, e.g.*, *M&T Bank Corp.*, 852 F. Supp. 2d at 333 ("It is a fundamental principle of contract law that courts must interpret and give meaning and effect to every provision in a contract").

For example, Paragraph 3.4 of Andritz's Terms and Conditions permits Andritz to mitigate that risk through controlled purchase price modification, as opposed to financial instruments that can (and did) generate losses larger than the risk they are intended to hedge. Dkt. 9-3 at p. 43, ¶ 3.4 (contract price is "further subject to modification to the extent of any change of foreign exchange rates" in the event of a material schedule delay); Dkt. 9-1 at pp. 18-19. Paragraph 3.4 of

Schedule C is the *only* reference in the entire contract to "foreign exchange rates" or anything remotely related.

Andritz's assertion that "Paragraph 3.4 only concern[s] the situation where there is performance of the Agreement and no convenience termination" (Dkt. 15 at p. 27) avoids the point and is wrong as a matter of contract interpretation. Paragraph 3.4 of Schedule C constitutes the *only* clear and unambiguous contractual provision related to currency risk, so the Court should not broadly construe an unrelated, generic provision (i.e., Paragraph 18) in a manner that would render Paragraph 3.4 superfluous. *See, e.g.*, *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2000) ("it is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'") (*quoting* Restatement (Second) of Contracts § 203(C)). Nor is it "inconsistent," as Andritz argues, for the base contract to state that the purchase price reflected on a purchase order is "firm unless otherwise noted" generally (assuming that the project meets a certain schedule) while elsewhere stating that a failure to meet that schedule would result in purchase price modification to reflect currency rate changes during the delay.

Once again, the legal authority cited by Andritz has no bearing on the contractual language at issue here. *Arc Electrical Constr. Co. v. George A. Fuller Co.*, a 50-year-old case, merely stands for the unremarkable proposition that a subcontractor should be paid the contract price for *actual services* rendered prior to termination. 24 N.Y.2d 99, 105 (1969) ("It is undisputed that the work had, in fact, been substantially performed by Arc and the fact that an architect, for some undisclosed reason, had failed to approve the work should not prevent the plaintiff from receiving compensation for its labors."); *see* Dkt. 15 at pp. 28-29. The case has nothing whatsoever to do with whether Paragraph 18 permits the recovery of hedging losses tied to third-party contracts that the Supplier Agreement does not reference in any way, shape, or form. Moreover, Andritz does

7

not allege that it was not paid for the *actual work* it performed prior to RG&E's original suspension in 2008. *See* Dkt. 1-2; 1-3.

For these many reasons, Andritz's breach of contract claim should be dismissed.

## II.   THE SUPPLIER AGREEMENT PRECLUDES ANDRITZ'S QUASI-CONTRACT CLAIMS

The concept of pleading in the alternative does not save Andritz's quasi-contract claims because the parties do not dispute the contract's existence or applicability. *Macintyre v. Moore*, 335 F. Supp. 3d 402, *416 (W.D.N.Y. 2018) (granting pre-answer dismissal because "Plaintiffs' unjust enrichment claim is barred by the existence of valid contracts covering the subject matter of their cause of action"); *MVP Health Plan, Inc. v. OptumInsight, Inc.*, 2014 U.S. Dist. LEXIS 153748, at *13-14 (N.D.N.Y. Oct. 29, 2014) (granting pre-answer dismissal of quasi-contract claims); *Verus Pharms., Inc. v. AstraZeneca AB*, 2010 U.S. Dist. LEXIS 83581, at *37 (S.D.N.Y. Aug. 16, 2010) (granting pre-answer dismissal of unjust enrichment claim because it "is based on the same facts as [plaintiff's] breach of contract claims" and "a 'valid, enforceable contract…governs the same subject matter as the [unjust enrichment] claim' and supersedes it").

To the extent Andritz alleges that the parties' dealings created a quasi-contract or implied-in-fact contract to allocate hedging costs to RG&E, the actual contract says otherwise. Dkt. 15 at pp. 28-29. Paragraph 3 of the Supplier Agreement requires a writing signed by both parties to modify the agreement. Dkt. 1-1, at p. 4, ¶ 3. Furthermore, as Andritz alleges, the Supplier Agreement sets forth the parties' rights and responsibilities with respect to termination. Indeed, the Supplier Agreement embodies the parties' complete agreement with respect to the Station 2 Project. Accordingly, Andritz's unilateral notices to RG&E regarding currency hedging costs do not constitute an amendment or modification to the Supplier Agreement that would permit Andritz to recover the costs it seeks here, and no implied-in-fact contract was formed as a matter of law.

III. **ANDRITZ DOES NOT OPPOSE DISMISSAL OF ITS CLAIM FOR DECLARATORY JUDGMENT**

Although RG&E briefed the issue directly (Dkt. 9-1 at Point II, pp. 22-23), Andritz does not oppose the dismissal of its second cause of action for declaratory judgment. Dkt. 15. Andritz's failure to oppose this prong of the motion requires dismissal of the declaratory judgment claim. *See Cerasani v. Sony Corp.*, 991 F. Supp. 343, 356 (S.D.N.Y. 1998) (dismissing claim where plaintiff offered no opposition in his motion papers).

## CONCLUSION

Based upon the foregoing, the Complaint should be dismissed.

March 5, 2021
Rochester, New York

**WARD GREENBERG HELLER & REIDY LLP**

    s/Joshua M. Agins
Joseph G. Curran
Joshua M. Agins
Michael J. Adams

1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
jcurran@wardgreenberg.com
jagins@wardgreenberg.com
madams@wardgreenberg.com

*Attorneys for Defendant Rochester Gas and Electric Corporation*